SHAW, Respondent v. GEORGE et al., Appellants

(141 N.W.2d 405)

(File No. 10250. Opinion filed March 28, 1966)

**Donley & Murphy,** Elk Point, for defendants and appellants.

**Christensen & Christensen,** Elk Point, for plaintiff and respondent.

ROBERTS, Judge.

This is an action in forcible entry and detainer certified by a justice of the peace to the circuit court. Trial was had to a jury which returned a verdict in favor of the defendants. The trial court granted motion of the plaintiff for judgment notwithstanding the verdict. From this judgment defendants have appealed.

The complaint alleges that by virtue of a contract for deed dated October 30, 1964, plaintiff is entitled to possession of the premises in question; that defendant Henry George became a lessee under a written lease with the former owner for a two-year term terminating March 1, 1965; and that the statutory notice to quit was duly served on defendants and that they are holding over and continuing in possession after termination of the written lease.

The answer denies generally the allegations of the complaint and affirmatively alleges right of possession of the premises under a valid and existing lease with the plaintiff. The right of possession was claimed under a verbal lease negotiated with the plaintiff in the fall of 1964. The decisive question is whether the evidence was sufficient to sustain the verdict.

The undisputed evidence shows that before his purchase of the premises plaintiff had a conversation with the defendants. They indicated a desire to enter into a lease if the plaintiff bought the farm. A few days later, October 22, 1964, plaintiff wrote defendant Henry George as follows: "I will be in Elk Point Saturday afternoon, October 24, to discuss how we shall farm the Bogard place next year and any agreement we plan to make." Defendant Henry George testified on direct examination: "We have been renting the land since 1945. There's 175 acres in the farm. * * * Mr. Shaw came down on or

about October 24. We discussed how we would farm the place, and what arrangements would be made on fertilizer, and what crop share we would give and that he would have a written lease drawn. I was asking for a five-year lease, and Bill said no, that he would rather have a two-year lease, and we discussed it some, and I finally told him that was all right, that we could go along on two years for a while, and then we'll go to five years after that."

The witness testified on cross-examination: "My son Kelly has been doing the farming and giving me fifty percent of the crop profits. * * * Q. Then Shaw said, 'Well, two years,' is that correct? A. Yes. Q. And then you said, 'Well, all right,' and then you let it go at that, is that right? A. We settled on two years. Q. So that the lease that you're claiming you're holding the property under now is for two years. A. That's what we agreed on."

Defendant Kelly George testified: "Q. Was there any dispute between yourselves and Mr. Shaw over terms? A. Well, not to any great extent, I don't believe. The only thing at first that came up was the length of the lease we could get. We wanted a long term to start with * * * but he didn't want a long term, so we agreed on two years—we would start out on a short-term lease until we got to know each other better, and then we would probably get a longer lease for the farm."

On November 2, 1964, plaintiff again wrote Henry George as follows: "The reason for a short lease is to have a chance to know each other before making long commitments. This is something like a partnership and I know we will cooperate. After Mr. Gary Christiansen has checked the abstract we will draw up a lease. I will let you know in a couple of weeks." A third letter, November 24, 1964, was written to Henry George wherein plaintiff wrote as follows: "I have decided to sell the contract which I recently bought on the Bogaard farm. E. E. Rozell will handle the farm. Therefore, I cannot say what your future might be in regard to renting the property March 1, 1965."

January 30, 1965, plaintiff caused a notice of termination of tenancy and to quit to be served on the defendants.

█ SDC 38.0402 invalidates in terms an "agreement for the leasing of real property or an interest therein" for a term longer than one year if not in writing. The expression "an agreement for the leasing" means an agreement to enter into a lease and there is a distinction between a present lease which creates an interest in real property and a mere agreement for a lease. Tiffany on Real Property (3rd Ed.) § 80. The real property provision of the statute of frauds, SDC 10.0605(3), provides that a lease of real property for a period longer than one year shall not be enforceable unless the same or some memorandum thereof is in writing and subscribed by the party to be charged or his agent authorized by him in writing to enter into such contract.

█ Whether a particular transaction constitutes a lease or a mere contract for a lease is a question of intention of the parties. If parties intend that an agreement be one of leasing, it so operates notwithstanding a written formal lease is to be later executed. Grigsby v. Western Union Tel. Co., 5 S.D 561, 59 N.W. 734. On the other hand, if they intend that an agreement should be as finally evidenced by a written lease, there is only an agreement for a lease. Laabs v. Scholl, 43 S.D. 515, 180 N.W. 963. It is undisputed that the parties in the present action negotiated for a two-year term. Whether the oral agreement be treated as a lease taking effect in praesenti or an agreement for a lease, it was not a leasing agreement that could possibly have been performed within one year. Hence, the oral agreement was not enforceable unless its invalidity was waived by acting upon it and executing it or there was basis for an estoppel. The failure of the plaintiff to comply with the understanding of the parties would not create a tenancy for two years or for a lesser term.

██ Defendants were in possession under an existing lease and the continued possession under the circumstance was not referable to a new lease and could not be regarded as an act of part performance which would take the transaction out of the statute of frauds. Defendants, however, assert that there were other facts which precluded plaintiff from invoking the statute of frauds; that "defendants had every right to believe that they would be farming the land during the 1965 growing season, and in relying on such belief changed their position from

that of tenants with an expiring lease looking for uncommitted rental property to that of tenants with a definite commitment for 1965" and proceeding with plans based on such expectation. We find no pleading presenting that defensive issue. Estoppel was urged in the trial court in opposition to motion by plaintiff for a directed verdict. We do not find evidence in the record to support the defense of estoppel if it had been pleaded.

In Federal Land Bank of Omaha v. Matson, 68 S.D. 538, 5 N.W.2d 314, an action in forcible entry and detainer, this court held that a party to an oral agreement may be prevented by estoppel from invoking the statute of frauds. Generally, the doctrine of estoppel is applicable only where a misrepresentation is made as to a past or present fact. The doctrine of promissory estoppel is an exception to ordinary requirements. Kelly v. Gram, 73 S.D. 11, 38 N.W.2d 460. The principle is embodied in Restatement of the Law of Contracts, § 90, as follows: "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." A case illustrating application of the doctrine of estoppel is Halligan v. Frey, 161 Iowa 185, 141 N.W. 944, 49 L.R.A.,N.S., 112, where an owner orally promised to lease his premises for a term of ten years at a stipulated rental to a tenant in possession of other property and the tenant relying on the promise surrendered the lease he held and incurred expenses in moving and placing improvements on the owner's premises. The court holding that the owner was estopped to set up the statute of frauds in order to insist on a tenancy at will and an increased rental said: "Of course, the mere denial of an oral agreement or a refusal to perform will not be sufficient to prove fraud. * * * But where a promise is made, such as is shown in this case * * * it is perfectly plain that defendant is attempting to use the statute of frauds as an instrument whereby to perpetrate a fraud upon the lessee and equity will give such lessee protection."

When plaintiff in the case before us purchased the farm, he was under no obligation to renew the existing lease

and as previously stated he definitely terminated negotiations with the defendants by letter written November 24, 1964. Defendants sought to negotiate a lease for a term of years and were fully aware of the importance of a written lease. If the parties as defendants contend intended a two-year lease and a written contract to be later executed, the authorities are against the conclusion that the mere refusal to enter into a written contract as agreed is such conduct as will establish an estoppel. 48 A.L.R.2d 1069. We are not to be understood as implying that the claimed forbearance on the part of the defendants was of a sufficiently definite and substantial character as would warrant application of the doctrine of promissory estoppel. Twilley v. Pennypack Woods Home Ownership Ass'n., 180 Pa. Super. 20, 117 A.2d 788; Hazlett v. First Fed. Sav. & Loan Ass'n., 14 Wash.2d 124, 127 P.2d 273.

The judgment appealed from is affirmed.

All the Judges concur.