**TRANSAMERICA EQUIPMENT LEASING CORPORATION, a Texas corporation, Appellant,**

v.

**UNION BANK, a California corporation, Appellee.**

**No. 22286.**

United States Court of Appeals, Ninth Circuit.

April 10, 1970.

Arthur J. Lempert (argued), San Francisco, Cal., for appellant.

Robert A. Holtzman (argued), Alfred I. Rothman, of Loeb & Loeb, Los Angeles, Cal., for appellee.

Before CHAMBERS, POPE* and MERRILL, Circuit Judges.

CHAMBERS, Circuit Judge:

Pursuànt to a contemplated three-party financing agreement, Transamerica sought to obtain a $600,000 loan from Union Bank to enable it to loan money to a corporation which had interests in some oil wells (Ancora Corporation).

---

* Circuit Judge Walter L. Pope participated in the hearing of the case but died while the case was under submission awaiting decision.

Transamerica alleges, and the bank denies, that a binding loan agreement was consummated. In this diversity action the district court found for the bank on the grounds that an alleged oral agreement was barred by the statute of frauds and a purported written contract was only an offer because the terms of the alleged contract left essential matters to further negotiation.

The participant in the transactions on Transamerica's side was C. Lee Chipman. Chipman initiated the negotiations with a bank loan officer, Harold P. Smith. Smith engaged one Eugene Fiedorek to conduct an engineering study on the primary and secondary reserves of the Ancora oil wells which were to be the security for the transaction. On September 12 and 13, 1963, Chipman met with appellant's officers to review the proposed documentation and to obtain approval of the loan. At this time the bank informed Chipman that it could not rely on Fiedorek's favorable engineering report because Fiedorek had been an officer of the bank. The bank then retained Schafer Engineering of Texas to prepare a confirming report. During a series of meetings on September 12–13, 1963, Chipman talked to Louis Siegel, senior executive vice president of the bank. Siegel was the only participant who had the authority to approve the loan. The outcome of these meetings between Siegel and Chipman is at the center of this dispute. Siegel testified that he said he would consider making the loan. In contrast, Chipman testified that Siegel agreed to make the loan. Chipman returned to Dallas to await the report by Schafer Engineering. Breakstone, a bank lawyer, testified that he then prepared a loan agreement with conditions and terms that would be negotiated later. The bank mailed the loan agreement to Chipman, who signed it and placed it in his file. Before Chipman communicated his acceptance of the agreement to the bank, Smith advised Chipman by telephone that the bank was unwilling to make the loan because Schafer had not concurred with the Fiedorek report in respect to the evaluation of secondary reserves. After further discussion between the parties, the bank continued in its refusal to make the loan.

Appellant's pleading and presentation of its evidence did not serve to establish whether it was relying on an oral or a written agreement. Consequently, the trial judge required plaintiff-appellant at the close of its case to elect between the two theories. Appellant chose to rely on the alleged oral agreement.

The district court concluded that the statute of frauds was a bar to appellant's claim based on an oral contract. Appellant argues that appellee waived the right to rely on the statute of frauds defense because it did not object to or move to strike the evidence concerning the oral agreement. However, we do not pass on the propriety of the lower court's application of the statute of frauds defense. Assuming the inapplicability of the statute of frauds defense and viewing the record in a light most favorable to appellant, an oral or a written contract is not established because the parties left essential terms to future negotiation. The most that appears is an unenforceable agreement to make an agreement. Where an agreement is not sufficiently definite to enable a court to give it an exact meaning or where an essential element is reserved for future agreement of both parties, a legal obligation cannot result. Lahaina-Maui Corp. v. Tau Tet Hew, 9 Cir., 362 F.2d 419; 1 Williston on Contracts §§ 37, 45. The record and findings show the following unresolved areas: (1) determination of which party would receive the first payment by Ancora; (2) determination of the method of payment of the bank's $11,500 fee; (3) determination of the repayment schedule; (4) preparation of a final writing to be executed by the parties. The court found that the loan agreement which was executed by a bank vice president and mailed to Chipman in Dallas omitted several elements which were to be negotiated in the future. One of

these elements was the repayment schedule. Concluding that the purported loan agreement was merely an offer because it left essential terms to negotiation, the court further found that the offer was withdrawn before it was accepted. The appellant's response is that the repayment schedule was not an essential term because it pertained only to the bank's internal division of payments rather than to the minimum monthly amount due to the bank. To accept the appellant's position requires making a number of assumptions about the essentials of a complex type of financing transaction. The district court refused to make these assumptions and on appeal we cannot say that the findings concerning the essential nature of the repayment schedule were clearly erroneous.

Arguments in the briefs span the spectrum of contract problems. However, the foregoing disposition makes unnecessary examination of the remaining points.

Judgment affirmed.