**WILLOWOOD CONDOMINIUM ASSOCIATION, INC., et al., Plaintiffs-Appellants,**

**v.**

**HNC REALTY COMPANY et al., Defendants-Appellees.**

**No. 74-3939.**

United States Court of Appeals, Fifth Circuit.

May 17, 1976.

Jack N. Price, Longview, Tex., for plaintiffs-appellants.

Charles F. Potter, Tyler, Tex., Daryl Bristow, David H. Thornberry, Houston, Tex., for defendants-appellees.

Before GEWIN, GODBOLD and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

Willowood Condominium Association, Inc., and Ramblewood West, Inc., brought suit properly grounded in diversity jurisdiction against the H.N.C. Realty Company, H.N.C. Mortgage and Realty Investors, and Southern Financial Group, Inc., alleging that the various defendants had breached a contract or commitment to make a loan. The defendants denied a contract had been made. The suit went to trial. The district court initially severed the issue of liability from that of damages. Plaintiffs rested their case as to liability following three days presentation of evidence. The district court thereupon granted an unopposed motion to dismiss Southern Financial Group, Inc., as a defendant, and, after arguments by counsel, granted motions for instructed verdicts exonerating H.N.C. Realty, Inc., and H.N.C. Mortgage and Realty Investors from all liability. Plaintiffs appeal.

The three corporate defendants are engaged in the business of transacting commercial loans involving real estate. H.N.C. Realty, Inc.,[1] (Realty) is a Connecticut corporation. H.N.C. Mortgage and Realty Investors (the Trust) is a Massachusetts business trust engaged in business as a real estate investment trust, known in current vernacular as an REIT. Both Realty and the Trust actively provide funds for real estate loans. Southern Financial Group, Inc.,[2] (S.F.G.) is a Florida corporation, a wholly-owned subsidiary of Realty. The business of S.F.G. is to act as real estate broker for Realty, as well as other entities.

Plaintiffs, Willowood Condominium Association, Inc., (Willowood) and Ramblewood West, Inc., were organized for the purpose of developing a condominium project in Longview, Texas, by Bill Jones and four other individuals. A mortgage broker engaged by Jones put Willowood into contact with the H.N.C. group. Bill Jones, on behalf of Willowood, was eventually engaged in negotiations with Ben Jacoby, the vice president of S.F.G. Two letters were written by Jacoby to Jones which plaintiffs contend constituted a contract on the part of defendants to loan 4.7 million dollars for the development of plaintiffs' condominium project, and consequently the two letters are at the crux of this suit.[3] The first of these letters, dated February 27, 1973, sets forth terms upon which a loan to the plaintiffs would be made, subject to approval of the loan committee of the parent company, Realty. Subsequently, the plaintiffs received the second letter stating the loan committee had acted favorably upon the loan, subject to three minor changes within the loan package. There was no written acceptance of these terms by plaintiffs. The loan was never consummated, and this suit was filed for damages.

The correct standards for the granting of a directed verdict were set out by this Court in *Boeing Co. v. Shipman*, 5 Cir. 1969, 411 F.2d 365. Where "the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict", *id.* at 374, the granting of a directed verdict is proper. Unless there appears to "be a conflict in substantial evidence to create a jury question . . . ", *id.* at 375, we should not disturb that verdict.

The defendants contend, and the trial judge held, that (1) the letters relied upon

1. H.N.C. Realty, Inc., is a wholly-owned subsidiary of the Hartford National Corporation.

2. Although S.F.G. is nominally a party to this appeal, plaintiffs did not oppose its dismissal as a party defendant by the district court, and it is not disputed that plaintiffs have prosecuted this appeal only against the Trust and Realty.

3. The complete text of the letters appears, together with handwritten and initialed deletions and additions made by the parties, as Appendix A to this opinion.

by the plaintiffs as a loan commitment are not sufficiently detailed to constitute a binding agreement or contract, (2) vice president of S.F.G. Jacoby had neither express, implied, nor apparent authority to bind either Realty or the Trust, and that (3) the purported contract was unenforceable as violative of the Statute of Frauds, Section 26.01 Texas Business and Commerce Code, in several respects. Because we hold the defendants' first point to be correct, we affirm, finding it unnecessary to dissect the agency powers of Jacoby and pretermitting any detailed examination of the Statute of Frauds.

An enforceable contract must be sufficiently certain to define the nature and extent of the parties' obligations. See, e. g., *Bendalin v. Delgado*, Tex.1966, 406 S.W.2d 897; *Moore v. Dilworth*, 1944, 142 Tex. 538, 179 S.W.2d 940.[4] It is hornbook law as well as clearly the law of Texas that " '[a] court cannot enforce a contract unless it can determine what it is. It is not enough that the parties think that they have made a contract; they must have expressed their intentions in a manner that is capable of understanding.' 1 Corbin, Contracts, 2nd ed. 1963, § 95." quoted in *Bendalin v. Delgado, supra*, 406 S.W.2d at 899. "It is said to be fundamental that a person may not be subjected by law to a contractual obligation unless the character of such obligation is fixed with a reasonable degree of definiteness by an express or implied agreement of the parties; that an agreement must not only identify the subject matter but also must spell out the essential commitments and agreements of the parties with respect thereto; and that the courts cannot specifically enforce contracts or award substantial damages for their breach when they are wanting in reasonable certainty." *Charles v. Charles*, Tex.Ct. of Civ. App.1972, 478 S.W.2d 133, 136 (writ. ref'd, n. r. e.).

In the instant case, the two letters, when read together, contain ambiguities affecting, or fail to mention altogether, items of a nature that we consider essential to a contract of this type. The loan contemplated was for a great deal of money by any standards, for 4.7 million dollars. Evidence introduced at trial as well as reference to ordinary business practices convinces us that a loan of such an amount is not a casual thing, but an enterprise carefully entered into by each party. With no delineation of essential elements of the proposed loan—elements we find unexplained and undetermined within the letters relied upon by the plaintiffs—there is no evidence of the "mutual assent" or "meeting of the minds" necessary to the formation of a contract.[5] There can be no binding contract between the parties if essential terms were left open for future negotiations between them. *Page & Wirtz Construction Co. v. Van Doran Bri-Tico Co.*, Tex.Civ.App. Amarillo, 1968, 432 S.W.2d 731, writ ref'd n. r. e.; *Engelman Inc. v. Sanders Nursery Co.*, Tex.Civ.App. El Paso, 1940, 140 S.W.2d 500, writ ref'd; *Hume v. Bogle*, Tex.Civ. App. Austin 1918, 204 S.W. 673, no writ.

The letter of February 27 gives us a hint as to the details of the agreement to be negotiated, but leaves essential questions unanswered.

For instance, the interest formula was specified as "4¼% over Hartford National Bank prime rate with a minimum of 9%". This formula, seemingly very specific, raises problems. How and when the interest would be adjusted or paid is not specified. There was testimony that a "floating rate"

4. This diversity suit is governed by the law of the forum state, Texas. *Erie Railroad Co. v. Tompkins*, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

5. See, e. g., *J. I. Case Threshing Machine Co. v. Howth*, 1927, 116 Tex. 434, 293 S.W. 800, "One must give his assent"; *Sweeney v. Cross*, Tex. Civ.App. El Paso, 1972, 476 S.W.2d 464, no writ, "mutual assent"; *Page & Wirtz Construction Co. v. Van Doran Bri-Tico Co.*, Tex.Civ. App. Amarillo, 432 S.W.2d 731, writ ref'd, n. r. e., "mutual assent"; *Garcia v. Villarreal*, Tex. Civ.App. Texarkana, 1971, 478 S.W.2d 830, no writ, "meeting of the minds"; *Slade v. Phelps*, Tex.Civ.App. Tyler, 1969, 446 S.W.2d 931, no writ, "meeting of the minds".

was intended to be established whereby the interest would be calculated on the unpaid balance as of a certain date each month. This is apparently common in transactions of the type contemplated. But such monthly calculation was nowhere specified in the contract, nor was the date of the month on which the interest was to be figured. A closing date for the loan was not fixed, so as to permit the initial interest rate to be determined. Because of the fluctuating prime rate, these undetermined details grow in magnitude, especially when viewed alongside the amount of the loan.

Additionally, ambiguity is present as to the disbursement and repayment of the principal. Provision was made for "advances" to be made against the loan. There was testimony that the money was to be loaned in stages. The details of these transactions, of critical importance to both a lender and a developer, were left unresolved. These inadequacies are major and critical.

Several problems and deficiencies present in this case have been held by Texas courts in similar circumstances to negate the formation of an enforceable contract. In *Bryant v. Clark*, 1962, 163 Tex. 596, 358 S.W.2d 614, the Texas Supreme Court determined that, in a suit for specific performance, a contract to sell real property for a purchase price of $10,000, a portion to be paid in fifteen annual installments and to bear interest at 6%, was too vague to be enforceable. The court was troubled by ambiguities as to whether the annual payments were to be of equal amounts and as to the methods of paying interest. Was interest to be paid annually, or in lump sum at the conclusion of the contract? The dissent noted that the parties to the purported contract were two laymen who should not be held to "technicalities". In contrast, the parties to the documents here were sophisticated and experienced in loan transactions of the type contemplated, so that even the essentially equitable concerns voiced by the dissent in *Bryant* are inapposite.

*Wheeler v. White*, Tex.Civ.App. Beaumont, 1964, 385 S.W.2d 619, rev'd on other grounds, 1965, 398 S.W.2d 93,[6] was a suit for damages for breach of a contract to make a loan. The Court of Civil Appeals found the contract unenforceable for reasons pertinent here. The alleged contract in *Wheeler* provided:

> "The loan to be made by, or obtained by, Party of the Second Part for the Party of the First Part, and to be in the sum of Seventy Thousand and no/100 ($70,000.00) Dollars and to be payable in monthly installments over a term of fifteen (15) years and bear interest at a rate of not more than six (6%) percent per annum."

385 S.W.2d at 619.

The *Wheeler* court, relying on *Bryant v. Clark, supra,* held that the agreement was too vague and indefinite to give rise to an action for damages, upholding thereby the defendants' contentions that the purported contract was fatally deficient for not specifying the amount of the monthly installments due, the amount of interest due, when it was payable, and how it was to be computed.

■ We find the Texas cases cited to be controlling. Just as the Texas courts refuse to speculate as to what was "reasonable" or what the parties intended, we should not attempt to supply missing terms of the contemplated loan in question here.

Beyond and in addition to the deficiencies already mentioned, the initial letter does not specify the borrower, but provides only that "[b]orrower: Corporation to be designated". Reading the letters as stating that the loan was to be guaranteed for payment by the four named individuals and their wives, implying perhaps that the identity of the corporate borrower is less significant

6. "We have concluded that the trial court did not err in sustaining the special exceptions directed at the sufficiency of the contract itself, but that Wheeler's pleadings on the theory of estoppel state a cause of action. Accordingly, we reverse the judgments of the trial court and the Court of Civil Appeals and remand the cause for trial". *Wheeler v. White*, Tex.1965, 398 S.W.2d 93, reversing Tex.Civ.App.1964, 385 S.W.2d 619.

than it would be otherwise, it is no less true that the corporate borrower was not identified. At the least this implies further negotiation. Two corporations have sued for damages for breach of the loan "commitment". Which, if either, should recover if we found the plaintiffs' assumptions were correct? The same ambiguity, perhaps to a lesser extent, exists as to the lender. Is "HNC Realty Co. or assigns" definite enough to impart liability to the Trust? More negotiations manifestly were contemplated.

It was testified that plaintiffs intended to obtain a loan which was to be secured by an interest in real property, a mortgage.[7] The details of this agreement are necessarily important to each of the parties, and a subject requiring negotiation.[8] Yet neither letter even mentions the word mortgage.

The letter of February 27 in its last paragraph expressly refers to what will ensue "[i]n the event a commitment in accordance with the terms of this letter is issued by the Trust". This phrase contemplates a *future* commitment, rather than incorporating the letter itself as a part of such commitment. The letter of March 12 stated that the loan had been approved, subject to three conditions. Is this letter the commitment envisaged by the prior letter? Reason dictates that the parties intended a formal commitment to be reduced to writing. This never occurred. We view the two letters as part of the negotiation process. They are too imprecise, too lacking in too many material items which must be agreed to by the parties, to provide substantial evidence of a "meeting of the minds" of the parties.

The district court judgment is therefore

AFFIRMED.

7. From the cross-examination of Bill Jones, Record, pages 306–307:

"[Mr. Bristow, counsel for the defense] Well, make reference to the two letters because what I'm trying to get down is the clear import of what they say.

First, with regard to the February 27th letter: 'We are prepared to present your loan on the above captioned property at the next meeting.' Now, what you meant was that you were going to get a loan on property designed Willowood Townhouse Condominiums, 250 units, Longview, Texas, and the borrower—the lender was going to get a mortgage on that property, right?

A. [Bill Jones] that's correct.

Q. That was what you were trying to put down on paper, wasn't it?

A. I didn't put it down on paper.

Q. Well, that's what you intended, at the time you signed the instrument, those words to mean that there was to be a loan on the land and buildings?

A. That's correct.

Q. Okay, As a matter of fact, the March 12th, 1973 letter there is a reference not only to the loan on 'the above captioned property', but there is also a reference to 'advance monies for the land', isn't there?

A. Yes.

Q. So, it was clear that you were negotiating, and this instrument was intended as mortgage on property; correct?

A. That's correct."

8. Indeed, it is the plaintiffs' theory that the reason for the defendants' refusal to proceed with the loan was that a loan officer of Realty became miffed because provisions of Texas condominium law prevented him from structuring the loan so that the properties would revert to the lender as rental property should the project encounter difficulties with the condominium format.

APPENDIX A

SOUTHERN FINANCIAL GROUP, INC.

SUITE 1009, 150 S.E. 2ND AVENUE • MIAMI, FLORIDA 33131 • (305) 371-8402

February 27th, 1973

Corporation to be Designated
Attention: Mr. William E. Jones
c/o Mr. Norman Baum, Vice President
Mortgage Corporation of America
1175 N. E. 125th Street
North Miami, Florida

Re: WILLOWOOD TOWNHOUSE CONDOMINIUMS
250 Units
Longview, Texas

Gentlemen:

We are prepared to present your loan on the above captioned property at the next regular loan committee meeting of our parent company, H.N.C. Realty Company, subject to a complete review and your acceptance of the following terms and conditions:

BORROWER: CORPORATION TO BE DESIGNATED.

LENDER: H.N.C. REALTY COMPANY and/or assigns.

AMOUNT: $4,700,000. as follows:

Land advance shall not exceed 75% of the appraised value of the land, including fees and closing costs.

Total advances shall not exceed 80% of the sales price or 100% of the "hard and soft" construction costs, whichever is less.

RATE: 4 1/4% over Hartford National Bank prime rate with a minimum of 9%.

TERM: 24 months with option to extend for one additional year.

AMORTIZATION: None.

PREPAYMENT: No prepayment in full during the first twelve months of the loan with a 1% prepayment penalty thereafter.

FEES: 1% for 24 months and 1% additional fee if loan is extended to 36 months. Such additional fee due and payable on the first day of the 24th month. on the then outstanding balance.

Mr. William E. Jones
February 27th, 1973
Page two

PRESALES:

Construction to be done in three Phases:

PHASE I

38 units, including models, recreational building and pool, will be allowed.

PHASE II

Developer will be permitted to start Phase II, consisting of 87 units, upon 50% sales, 50% completion ~~and condominium declared in Phase I;~~ however, the Developer shall not be permitted more than 25 units in excess of confirmed sales at any one time. ~~Phase II may not be declared a condominium until 44 units in Phase II have been sold and completed~~. Developer may be permitted to declare the entire project a condominium upon sale of 50 units.

PHASE III

Developer will be permitted to start Phase III, consisting of 125 units, upon 50% sales, 50% completion ~~and condominium declared in Phase II;~~ however, the Developer shall not be permitted more than 25 units in excess of confirmed sales at any one time. ~~Phase III may not be declared a condominium until 63 units in Phase III have been sold and completed~~.

RELEASES:

Units will be released on sale by payment of a release price of 90% of the sales price of the unit.

GUARANTORS:

The loan will be guaranteed for payment and completion by the following individuals and their wives:

RONALD JONES
WILLIAM JONES
JACK PRICE
RICHARD KENNEDY

SPECIAL CONDITIONS:

Subject to a site inspection at the Borrower's expense.

The following documents and any other documents reasonably required by the Lender will be furnished by the Borrower for the Lender's approval prior to closing:

1. Financial statements, executed and dated, on the Borrower and Guarantors, not more than six months old.

continued/...

Mr. William E. Jones
February 27th, 1973
Page three

SPECIAL CONDITIONS CONT'D:

2. Preliminary plans and specifications.
3. M.A.I. appraisal.
4. Topographical survey.
5. Location map.
6. Copy of land purchase contract.
7. Complete construction cost breakdown by trade and amount.
8. Sales price by individual units.

The above terms and conditions are subject to the approval of the Board of Trustees of H.N.C. Mortgage and Realty Investors, and while the commitment will contain the above terms and conditions, it will not necessarily be limited to them. If the above terms and conditions are acceptable to you, please return a signed copy of this letter with a good faith deposit in the amount of $10,000., made payable to H.N.C. Realty Company, within ten (10) days from the date of this letter.

In the event a commitment in accordance with the terms of this letter is issued by the Trust, but not accepted by you, the good faith deposit will be forfeited. Should a commitment not be issued, the good faith deposit, less any expenses incurred by H.N.C. Realty Company or its affiliate Southern Financial Group, will be returned to you; less out of pocket expenses incurred not to exceed $500 (not including appraisal). If you accept the commitment, the good faith deposit will be applied towards the non-refundable fee at the time of closing.

This letter supercedes our letter of February 23rd, 1973.

Very truly yours,

Ben M. Jacoby
Vice President

BMJ/cc

EXAMINED AND ACCEPTED this __________day of ________________________.

By_______________________________________
(Title)

By_______________________________________
(Title)

# SOUTHERN FINANCIAL GROUP, INC.

SUITE 1009, 150 S.E. 2ND AVENUE • MIAMI, FLORIDA 33131 • (305) 371-8402

March 12th, 1973

Mr. William E. Jones
c/o Mr. Norman Baum
Vice President
Mortgage Corporation of America
1175 N. E. 125th Street
North Miami, Florida

Re: WILLOWOOD CONDOMINIUM
Longview, Texas

Dear Mr. Jones:

We were advised on Friday, March 9th, that your loan on the above captioned property was approved by our parent company, H.N.C. Realty Company, subject to the following minor changes:

1. Lender will advance monies for the land, 15 units, recreational building and pool. After sale of 15 units, the Builder may build and remain 25 units ahead of sales.

2. Condominium may be declared upon 70% presales, or in no less than three (3) separate clusters.

3. The term of the loan will be three (3) years with the right of prepayment after two (2) years by forfeiting the 1% fee. Naturally, this does not include prepayment in accordance with the regular sales release clause.

Very truly yours,

Ben M. Jacoby
Vice President

BMJ/cc