Herb **WERNER**, d/b/a **The Dakota American Company, Plaintiff and Appellant,**

v.

**NORWEST BANK SOUTH DAKOTA, N.A., Defendant and Appellee.**

No. 17954.

Supreme Court of South Dakota.

Considered on Briefs Jan. 13, 1993.

Decided April 21, 1993.

Michael L. Buffington, Rapid City, for plaintiff and appellant.

Michael M. Hickey of Bangs, McCullen, Butler Foye and Simmons, Rapid City, for defendant and appellee.

HENDERSON, Justice.

### PROCEDURAL HISTORY/ISSUES

This matter arises from a grant of summary judgment to Norwest Bank South Dakota, N.A. (Norwest) on March 16, 1992, concerning appellant Herb Werner's (Werner) claim that appellee Norwest had

breached an oral agreement to provide a commercial loan. Upon the trial court's finding that there was no genuine issue of material fact, Werner filed Notice of Appeal on May 29, 1992 raising the following issues:

I. Did the trial court err in granting summary judgment in regard to the existence and terms of an oral agreement to loan money?

II. Did the trial court err in granting summary judgment concerning partial performance and promissory estoppel?

We hold that there was no error and affirm the trial court in all respects.

## FACTS

In 1979, Werner moved to Hot Springs, South Dakota to establish Dakota American, a manufacturer of art reproduction, books, and picture frames. Soon thereafter, he opened a checking account with Norwest and purchased five acres of land in the Hot Springs Industrial Park. Norwest loaned Werner $15,000 to construct a pre-fabricated building on the land, as well as several other loans of lesser amounts during the years 1979 through 1982. However, he failed to pay an $11,000 note due March 10, 1981, and defaulted on another note due in May 1982.

Prior to the May default, Zondervan Book Stores of Grand Rapids, Michigan placed two purchase orders for picture frames with Werner. In June of 1982, after completing the two orders, Werner met with Richard Brady (Brady), a Norwest loan officer, about financing an order of 10,000 to 20,000 picture frames for Zondervan. (Werner refers to this order as PO3.) Werner estimated that the materials would cost somewhere between $60,000 and $80,000. Although Brady indicated that Norwest could handle loans of that amount, at no time did they discuss a specific amount, interest rate, term, or collateral.

On June 15, 1982, Norwest obtained a security interest in Werner's accounts receivable and loaned Werner $6,000 to pay off old bills and raw materials. Later that same month, Werner wrote a check to purchase equipment from Wave Manufacturing. Although the check bounced, Norwest covered the overdraft.

In October, Norwest refused to loan $75,000 for the purchase of materials and supplies for PO3. After being denied loans by other banks, Werner obtained two $25,000 advances from Zondervan. In the meantime, Norwest loaned Werner lesser amounts, totaling over $19,000, to cover various expenses. In spite of these finances, Werner failed to complete the order because he ran out of money.

As a result, Werner filed this action claiming breach of an oral promise to loan money. However, the trial court granted summary judgment to Norwest.

## DECISION

### STANDARD OF REVIEW

In reviewing a grant of summary judgment, we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to any judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper. *Waddell v. Dewey County Bank*, 471 N.W.2d 591, 593 (S.D.1991); *Garrett v. BankWest, Inc.*, 459 N.W.2d 833, 836–37 (S.D.1990).

When resisting a motion for summary judgment, the nonmoving party must be diligent. Mere allegations and denials which do not set forth specific facts will not prevent issuance of a judgment. *Breen v. Dakota Gear & Joint Co., Inc.*, 433 N.W.2d 221, 223 (S.D.1988). However, a party may not claim a version of the facts

more favorable than the version given in the party's own testimony. *Lalley v. Safway Steel Scaffolds, Inc.*, 364 N.W.2d 139 (S.D.1985); *Swee v. Myrl & Roy's Paving, Inc.*, 283 N.W.2d 570 (S.D.1979).

## I. CONTRACTS REQUIRE SPECIFIC TERMS

Werner asserts that his June 1982 conversation with Brady culminated in an oral loan agreement. Although Werner admits that not all terms were specific, he contends that those unspecified terms could be determined by viewing previous dealings between the parties. Norwest claims that this lack of material terms proves that no valid contract exists under the law.

■ The existence of a valid express contract is a question of law to be determined by a court, not a jury. *Mid–America Mktg. Corp. v. Dakota Industries*, 289 N.W.2d 797 (S.D.1980). An express contract results when the parties mutually express an intent to be bound by specific terms and conditions. *Van Zee v. Witzke*, 445 N.W.2d 34 (S.D.1989). Werner contends that these cites are inapplicable because the facts concerning the specific terms and conditions were not disputed or conflicting. He argues, on one hand, that these authorities are inapplicable because no express contract is involved. On the other hand, he claims the terms and conditions exist through discussions with Richard Brady and course of dealing, yet never argues for an implied contract. Therefore, the possibility of an implied contract must be deemed waived. SDCL 15–26A–60(6); *Corbly v. Matheson*, 335 N.W.2d 347 (S.D. 1983).

Instead, Werner cites *Belknap v. Belknap*, 20 S.D. 482, 107 N.W. 692 (1906), which holds that the meaning of conflicting evidence in an oral contract is properly left to the jury. The major fault with *Belknap* (as well as most authorities cited by Werner) is that it applies where a contract is said to already exist. Such is not the case here.

■ When requesting summary judgment, Norwest claimed that too many essential terms were not specified, such as the amount of the loan, interest rate, term, security, time and method of repayment, closing date, and the preparation and execution of written documents. Where there is no showing that the terms of an alleged oral agreement were ever settled or agreed upon, the trial court is proper in granting summary judgment. *Deadwood Lodge No. 508 v. Albert*, 319 N.W.2d 823, 826 (S.D. 1982), *citing Engle v. Heier*, 84 S.D. 535, 173 N.W.2d 454 (1970).

■ As evident in his own brief, Werner fails to specify terms that indicate the existence of a contract. He cannot specify the amount of the loan, rather he gives a ballpark figure of "between $70,000 and 80,000—$80,000 being the max." Yet, he has also testified that the amount needed could be as little as $60,000. He claims the interest rate could be inferred from his previous loan. For a security agreement on the alleged $70,000 to $80,000 loan, Werner points to a June 15, 1982 document. However, the June 15 note indicates a $6,000 loan. No evidence supports the security note's relation to PO3. In the past, whenever Werner received a loan from Norwest, notes were signed indicating a specified amount, due date, interest rate, method of payment and security. By failing to establish the specific terms, Werner purports an agreement that lacks the necessary elements required to create a binding contract. Nothing was reduced to a writing. According to Werner, the specifics are to be left to the jury to determine.

■ We disagree. Nowhere does Werner profess the exact terms of the alleged contract. Both Werner and Norwest agree that several terms were not specified. Thus, there is no factual dispute. If the complaining party cannot allege what the facts are, how can he expect the jury to decide them. An agreement must be sufficiently definite to enable a court to give it an exact meaning. *Deadwood Lodge* at 826. Essentially, Werner wants a jury to create a contract from his estimates of the terms. No enforceable obligation can be established from this lack of specific terms.

Other jurisdictions have granted summary judgments under the same circumstances. An oral contract is not established where essential terms are left open to future negotiations. *Transamerica Equip. Leasing Corp. v. Union Bank*, 426 F.2d 273 (9th Cir.1970). Where there was no understanding as to the exact amount of money, interest rate, time and method of repayment, and no exchange of documents, no enforceable contract can be said to exist. *Champaign Nat'l. Bank v. Landers Seed Co., Inc.*, 165 Ill.App.3d 1090, 116 Ill.Dec. 742, 519 N.E.2d 957 (1988), *cert. denied*, 489 U.S. 1019, 109 S.Ct. 1138, 103 L.Ed.2d 199 (1989); *Balter v. Pan American Bank*, 383 So.2d 256 (Fla.App.1980); *Marine Midland Bank v. Herriott*, 10 Mass.App. 743, 412 N.E.2d 908 (1980); *Willowood Condominium Ass'n, Inc. v. HNC Realty Co.*, 531 F.2d 1249 (5th Cir.1976).

Werner filed suit to show the existence of an oral loan agreement, a contract, with Norwest. Yet Werner's own briefs and testimony show the lack of specific terms. Finding that Werner had not met his burden, the lower court granted summary judgment to Norwest holding that no material facts are in dispute that would prove the existence of a contract. We concur.

## II. THERE WAS NO JUSTIFIABLE RELIANCE.

Due to the lack of contractual certainty as previously indicated, Werner could not have reasonably relied on Norwest to grant him a loan in excess of $60,000. According to Werner, when he asked if Norwest could handle a $70,000 to $80,000 loan, Brady responded, "No problem." Even so, this affirmation does not constitute mutual assent to an oral contract. The agreement upon which Werner allegedly relied is too "vague, uncertain, and unsettled" to support an estoppel claim. *See Garrett v. BankWest, Inc.*, 459 N.W.2d 833 (S.D.1990); *Calosso v. First National Bank*, 143 So.2d 343 (Fla.App. 1962) (bank made no firm commitment which would justify the plaintiff in action in reliance thereon).

According to this state's statute of frauds, SDCL 53–8–2, agreements for loaning money (except those made pursuant to SDCL 51A–12–12 or 54–11) are not enforceable unless the contract or some memorandum is in writing and subscribed to the party to be charged. Allegedly believing a contract existed, Werner purchased materials for PO3 despite the lack of a written agreement. Noting that this Court has not recognized such, Werner suggests that we extend statute of frauds exceptions to include part performance. *See* 73 Am.Jur.2d *Statute of Frauds*, § 408, at 36 (1974). Thus, Werner acknowledges that the trial court was not obligated to recognize the exception. Because we, like the trial court, find that the actions by Werner were performed either subsequent to the alleged contract or without justifiable reliance, we find no reason to consider adopting the exception at this time.

Under a promissory estoppel argument, Werner would have to show where he altered his position to his detriment in the reasonable belief that a promise would be performed. *Garrett* at 848. For the reasons justifiable reliance was denied, we also fail to find promissory estoppel. Werner was able to secure funds from First Federal and Zondervan, as well as smaller loans from Norwest, after Norwest rejected the large loan. Furthermore, there is no reason to believe that the purchase of materials would not have been done except for the alleged loan agreement.

Simply because Norwest covered an overdraft does not suggest that the bank authorized a loan in excess of $60,000. The payment of an overdraft creates only an unsecured loan. *Thiele v. Security State Bank of New Salem*, 396 N.W.2d 295 (N.D.1986). Furthermore, Norwest's decision to grant small loans to Werner after refusing a large loan in no way advances the claim that the large loan had, in fact, been approved.

As noted earlier, Werner, as nonmovant, must present specific facts showing that a genuine, material issue of fact for trial exists. *Du–Al Mfg. Co. v. Sioux Falls Const. Co.*, 487 N.W.2d 29 (S.D.1992).

Mere suggestions will not suffice. *Breen, supra.* We find that the trial court did not err in granting summary judgment to Norwest.

MILLER, C.J., WUEST and AMUNDSON, JJ., concur.

SABERS, J., dissents.

SABERS, Justice (dissenting).

I dissent.

I would reverse and remand for a trial because a genuine issue of material fact exists as to the terms and existence of an oral agreement to loan money.

As stated in *State, Dept. of Revenue v. Thiewes:*

"Certain guiding principles on the use of summary judgment have evolved. They are: (1) The evidence must be viewed most favorable to the nonmoving party; (2) The burden of proof is upon the movant to show clearly that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law; (3) Though the purpose of the rule is to secure a just, speedy and inexpensive determination of the action, it was never intended to be used as a substitute for a court trial or for a trial by jury where any genuine issue of material fact exists. (4) A surmise that a party will not prevail upon trial is not sufficient basis to grant the motion on issues which are not shown to be sham, frivolous or so unsubstantial that it is obvious it would be futile to try them. (5) Summary judgment is an extreme remedy and should be awarded only when the truth is clear and reasonable doubts touching the existence of a genuine issue as to material fact should be resolved against the movant."

448 N.W.2d 1, 2 (S.D.1989) (quoting *Wilson v. Great N. Ry. Co.,* 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968)).

Viewed properly in this light, it appears that there is a bona fide dispute over the existence and terms of the oral agreement to loan this money. This is obvious from a review of Werner's testimony and the records of the Bank, which include the Bank's comments to the loan file and the fact that the Bank obtained a security agreement to cover future loans.[1]

In reviewing a grant of summary judgment, we are not bound by the trial court's factual findings and must conduct an independent review of the record. *Taggart v. Ford Motor Credit Co.,* 462 N.W.2d 493, 499 (S.D.1990); *Koeniguer v. Eckrich,* 422 N.W.2d 600, 601 (S.D.1988).

Q: Well, what did you—what was your understanding when Rick Brady said, "Norwest can handle it"? Did you think you had a commitment from them to lend you however much money you needed?

A: I thought it was—I thought we had it all settled.

Q: So the answer is—

A: I didn't know otherwise until much later.

Q: So the answer is "Yes"?

A: As far as—with Rick Brady and myself, I felt that we did.

. . . .

Q: And the way that was done, let's review that, okay. They set up a $15,-000 note, didn't they?

A: I think so.

Q: And they made advances under that note—

A: Right.

Q: —correct?

That's the way the bank, in your experience, always handled loans to you, isn't that true?

A: You mean this particular bank?

---

1. *See* Deposition Exhibit #3 (Security Agreement). Under the terms of the Security Agreement dated June 15, 1982, Werner granted First National Bank (Norwest) a security interest (in inventory, equipment, accounts, contract rights and other rights to payment) "[t]o secure the payment and performance *of each and every debt, liability and obligation of every type and description which Debtor may now or at any time hereafter owe to Secured Party (whether such debt, liability or obligation now exists or is hereafter created or incurred* [.) ]" (Emphasis added.)

Q: Yes.

A: Not all the time. We didn't always do that.

Q: Can you give me one example when they handled it different than that?

A: Yeah.

Q: Tell me when.

A: When we was getting ready for the third order of Zondervan's in '82, in June.

Q: When in '82?

A: Yeah, June of 1982. There's a security agreement on the 15th of June. After that we were going to buy some equipment from a company that was closing down here in Rapid City, Wave Manufacturing, and we needed the extra equipment to help take care of this order, so we purchased that.

Rather than pay the interest on a note or underneath a security agreement or something like that, Rick Brady says, "That doesn't make much sense. We'll just run—whenever you get ready and they get ready up here to close that thing down"—they weren't quite sure what date that was going to be—"just write that check," which would make an overdraft, and at that time he would—they would cover them down there and then we would make the loan; that would save that much interest. So that wasn't—that may be one example how we would do something.

Werner alleges that he purchased equipment necessary to fill the third order of Zondervan's (PO3) "because of the specific promise" that the Bank would loan him the needed capital. "If these allegations were established at trial, it would not be unreasonable for the trier of fact to conclude that the parties entered into a definite ... contract ... [and Werner] should have the opportunity to prove at trial the existence of a contract" to provide a commercial loan. *Larson v. Kreiser's Inc.*, 427 N.W.2d 833, 834 (S.D.1988).

With questions of fact, doubts must be resolved against the Bank as the moving party. The Bank has failed to establish that there is *NO* genuine issue of material fact. The trial court's decision is contrary to recent summary judgment law in South Dakota, especially *State, Dept. of Revenue v. Thiewes*, 448 N.W.2d 1 (S.D. 1989), a unanimous opinion written by Justice Henderson where we reversed the trial court because the moving party failed to sustain its burden that there were no genuine issues of material fact. Where reasonable persons might reach different conclusions, summary judgment should be denied. *Dahl v. Sittner*, 429 N.W.2d 458, 461 (S.D.1988) (citation omitted).

No one is entitled to summary judgment unless entitled thereto as a matter of law and there are no genuine issues of material fact. SDCL 15–6–56(c). Here, the trial court incorrectly placed the burden upon the non-moving party instead of upon the moving party, the Bank. For all of the above reasons and all of the well-reasoned summary judgment cases in South Dakota, summary judgment was improper. (*See Wilson v. Great N. Ry. Co.* and its progeny.) *Lamp v. First Nat'l Bank*, 496 N.W.2d 581, 585 (S.D.1993). Here too, "the moving party failed to sustain its burden that there were no genuine issues of material fact" and "the trial court incorrectly placed the burden upon the non-moving party instead of upon the moving party, the Bank." *Id.* We should reverse and remand for a trial in accordance with SDCL 15–6–56(c), *Thiewes*, 448 N.W.2d 1 and *Wilson*, 83 S.D. 207, 157 N.W.2d 19.[2]

---

2. According to the majority opinion, "the possibility of an implied contract must be deemed waived" because Werner never argues for an implied contract. Once again "'this court is overreacting to SDCL 15–26A–60 which results in decisions that rely too heavily on waiver of a point or argument by failure to cite authorities.' *Corbly v. Matheson*, 335 N.W.2d 347 (S.D.1983),

and its progeny should not be stretched beyond all reasonable contemplation." *Larson,* 427 N.W.2d at 835 (Sabers, J., concurring in part and dissenting in part). Werner's denomination of the issues, arguments and citations, including *Larson,* are sufficiently broad to include *implied* contract. *Id.* (Morgan, J., concurring in part and dissenting in part); *Id.* (Sabers, J., concurring in part and dissenting in part).