Todd J. OWENS, Plaintiff and Appellant,

v.

Elizabeth M. MOYES, Defendant and Appellee.

No. 18785.

Supreme Court of South Dakota.

Considered on Briefs Jan. 11, 1995.

Decided April 26, 1995.

Rodney C. Lefholz, Rapid City, for plaintiff and appellant.

Thomas G. Fritz of Lynn, Jackson, Shultz & Lebrun, Rapid City, for defendant and appellee.

MILLER, Chief Justice.

Todd J. Owens ("Owens") appeals from a judgment granting a motion for a directed verdict. We affirm.

### FACTS

Owens filed his complaint claiming that Elizabeth M. Moyes ("Moyes") owed him $11,780 for loans he claims he made to Moyes during the course of their ill-fated relationship. The scant record discloses that following the close of Owens' case in chief, the trial court directed a verdict of $654.01 for Owens, the sum of money that Moyes agreed that she owed Owens and which was evidenced by written "IOUs." The trial court concluded that since there was no writing signed by the parties representing the balance of the amount Owens claimed he had loaned to Moyes, the statute of frauds, SDCL 53–8–2, prevented the enforcement of any additional sum.[1]

---

1. Owens' appeal challenges the trial court's interpretation of the statute of frauds. He contends the statute of frauds prohibits the enforcement of a *promise* to loan money but does not prohibit the collection of money actually loaned.

It appears from the record, however, that Moyes disputed that the amounts over $654.01 were ever loaned to her by Owens. Accordingly, the trial court's directed verdict was not without support in the record.

■ In their briefs Owens and Moyes have given their version of the facts in this case. The majority of the "facts," however, are not before this Court because Owens did not order a trial transcript. Additionally, although Owens directs this Court to review the depositions, facts gleaned from depositions are not considered when we review the grant of a motion for directed verdict. *Baltodano v. North Cent. Health Serv.*, 508 N.W.2d 892 (S.D.1993).

■ In *Baltodano*, this Court was faced with a similar situation. A verdict was directed in favor of North Central. Baltodano appealed but did not obtain a transcript. We held:

> Thus, Baltodano is faced with two presumptions—the first being that on a directed verdict motion, we presume that the trial court acted correctly. [*Sabag v. Continental South Dakota* ], 374 N.W.2d [349, 355 (S.D.1985) ]. Second, when we are confronted with incomplete records—in this case, the lack of a trial transcript showing the testimony heard by the trial court—we presume that the circuit court acted properly. [*In re* ] *C.M.*, 417 N.W.2d [887, 889 (S.D.1988) ]. Baltodano must overcome both of these presumptions before we can reverse the judgment of the trial court. We believe that Baltodano's inability to overcome these presumptions is dispositive of this case, and affirm the trial court on this basis alone.

508 N.W.2d at 895.

■ The appellant has the burden of going forward in an appeal, and providing this Court with an adequate record upon which to do so. If appellant chooses to dispense with a full transcript, he must be prepared to overcome the strong presumptions in favor of the trial court's decision. *Id.* Thus, we review Owens' appeal based on the scant record before us, keeping in mind these presumptions.

■ Here, we are asked to review the trial court's ruling on Owens' claim that there existed a contract with Moyes for the lending and repayment of money. The case of *Werner v. Norwest Bank*, 499 N.W.2d 138 (S.D. 1993), controls this issue. The existence of a valid express contract is a question of law to be determined by the court, not a jury; an express contract exists only when the parties mutually express an intent to be bound by specific terms and conditions. *Id.* Where there is no showing that the terms of an alleged oral agreement were ever settled or agreed upon, it is proper for the trial court to make a summary finding against the existence of a contract. *Id.* Thus, in *Werner*,[2] "[w]here there was no understanding as to the exact amount of money, interest rate, time and method of repayment, *and no exchange of documents*, no enforceable contract can be said to exist." *Id.* at 142 (emphasis added).

Further, since *Baltodano* compels us to presume the trial court's determination is proper when we are not provided with a trial transcript and to presume the trial court acted properly in granting the directed verdict, we may affirm the decision on any basis, regardless of whether it is the identical rationale employed by the lower court. We note that we have previously held that a party to an oral agreement may be prevented by estoppel from invoking the statute of frauds where a misrepresentation is made as to a past or present fact. *Shaw v. George*, 82 S.D. 62, 141 N.W.2d 405 (1966). *See* Restatement of the Law of Contracts, § 90 ("A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce

---

2. Admittedly, *Werner* involved the issue of a promise to loan money, as distinguished from Owens' claim here that the money was actually loaned. While the dissent correctly points out that the statute of frauds does not prohibit the enforcement of an agreement to repay money loaned, this case involves a question as to whether the sums at issue were loans or gratuitous expenditures for Moyes' benefit during the course of a romantic relationship. Since we do not have a transcript of the evidence presented by Owens at trial, we are compelled to conclude that the trial court assessed Owens' evidence as failing to establish such loans. *See Baltodano*. The existence of a writing to memorialize a loan agreement is a proper consideration for the trial court in determining whether plaintiff has proven the existence of such an agreement. *See Werner*, 499 N.W.2d at 142.

such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."). Following the presentation of his case, the trial court may have properly concluded that Owens' claim was nothing more than a thinly veiled attempt to mete out some form of revenge for the soured relationship between the parties, rather than a valid claim for the repayment of an actual loan agreement.

The dissent claims Owens was entitled to judgment for $5,000 because Moyes admitted this amount in her answer. His complaint sought a judgment for $11,780 as repayment for the alleged loans. In paragraph IV of her answer, Moyes specifically "denies owing Plaintiff the sum of $11,780.00 and puts Plaintiff to his strict proof of the same." The following paragraph of her answer is that quoted by the dissent, where she alleges a *separate* $5,000 loan and the terms of repayment, which had not matured. It is entirely possible that given Owens' evidence the trial court determined that this separate loan agreement including Moyes' agreement to repay the sum, had not matured, and he was not entitled to judgment until such time as Moyes defaulted on her repayment obligation. Admittedly, this requires some degree of speculation regarding the record before the trial court. However, that is precisely why the rule in *Baltodano* requires that we presume the correctness of the trial court's ruling. A full transcript would eliminate such uncertainty and might provide a better opportunity for Owens to overcome these presumptions. Without one, however, we are bound to presume the correctness of the trial court's decision and construe all facts consistent with such presumptions.

The partial transcript that Owens has provided contains a statement of the trial judge made after the completion of the trial and adjournment. He thanked the jury for their service and apologized for having to take the decision out of their hands by directing a verdict. He said:

> The law—I'll let you know what happened. The law in this case is if a person—and keep this in mind. It may come to your benefit later on.

> No promises to pay money, no loans that are provided—can be enforced in court unless there is a subscription, a writing, that confirms the essence of that loan. So if someone—if you walk up and say "hey, can I borrow 20 bucks until next week," you give him 20 bucks, you can never sue him to collect it. So there has got to be a subscription, a writing confirming the existence of some agreement to pay back the money at some point in time. . . .

This statement was purely gratuitous, rendered after adjournment of the proceedings. We do not consider such language to be part of the court's decision and we do not express an opinion as to the accuracy of such a statement.

Based upon the posture in which Owens has presented this appeal and the foregoing analysis, we conclude that Owens has failed to overcome the strong presumptions set out in *Baltodano*.

We affirm.

AMUNDSON and KONENKAMP, JJ., concur.

SABERS, J., dissents.

GILBERTSON, J., not having been a member of the Court at the time this case was submitted did not participate.

SABERS, Justice (dissenting).

The trial court erred in directing a verdict that plaintiff could not recover monies lent to defendant that were not evidenced by a written document.

The trial court said "you give him 20 bucks, you can never sue him to collect it." This is nonsense. The statute of frauds prohibits enforcement of:

> An *agreement* for a loan of money or for an extension of credit[.]

SDCL 53–8–2(4) (emphasis added). In other words, the statute of frauds prohibits the enforcement of an *agreement* or *promise* to loan money but does not prohibit the collection of money loaned. Therefore, the trial court was dead wrong.

Even more important is the fact that the Answer to the Complaint *admitted* that:

> Plaintiff *has* loaned to defendant the sum of $5,000.00 and defendant has offered to repay plaintiff that amount according to their agreement. (Emphasis added).

"[N]o evidence is required to establish a fact conceded by answer." *Simons v. Kidd,* 73 S.D. 306, 309, 42 N.W.2d 307, 308 (1950). This is an admission against interest and eliminates plaintiff's burden of proof to at least $5,000.00, not just the $654.00 found by the trial court. See *Id.* Since the burden of proof as to $5,000 is eliminated, the majority opinion's strained justifications and the pre-sumptions from *Baltodano* are not even relevant.

We should reverse this case because the trial court went against *settled* South Dakota Law at least twice.

Accordingly, I would reverse and remand to the trial court to enter judgment consistent with this dissent.