11 P.3d 20

Newell R. SIMONS and Carol Simons, husband and wife, Pocatello, May Term of Court Plaintiffs–Respondents,

v.

DeLila SIMONS, personally and as Representative of the Estate of Joel Elmer Simons and Estate of Joel Elmer Simons (deceased), Defendant–Appellant.

No. 25001.

Supreme Court of Idaho, Pocotello, May Term of Court.

Aug. 1, 2000.

Rehearing Denied Oct. 6, 2000.

Meyers, Thomsen & Larson, LLP, Pocatello, for appellant. A. Bruce Larson argued.

Douglas K. Merkley, Pocatello, for respondents.

SCHROEDER, Justice.

DeLila Simons (DeLila) appeals the district court's decision ordering specific performance of a contract for the conveyance of real property.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

Newell and Carol Simons (Newell and Carol) were joint owners of 1500 to 1800 acres of farmland, with DeLila and Joel Simons (DeLila and Joel) in Caribou County, Idaho. Joel and Newell were brothers. Additionally, Newell and Carol owned a house and approximately sixty acres which Newell had received from his mother in 1957. At the same time his mother had deeded a home and land to Joel. Sometime prior to February 6, 1987, the farm property, homes, and improvements were subject to a Federal Land Bank Mortgage. The obligation to the Federal Land Bank was in default, and the encumbrance by the Farm Credit Service exceeded the value of the real property. On February 6, 1987, Newell, Carol, DeLila and Joel met in Pocatello to discuss possible alternatives in lieu of foreclosure on the farm property. DeLila and Joel determined that they would file for Chapter 12 bankruptcy to save the property. This chapter of the bankruptcy code is available only to family farmers with regular annual income.

To avoid participation in the bankruptcy proceedings, Newell and Carol quitclaimed their interest in the 1500 to 1800 acres to DeLila and Joel. They also deeded their interest in the house and approximately sixty acres that Newell had received from his mother. DeLila and Joel agreed that upon the satisfaction of the Federal Land Bank debt they would convey the home and sixty acres back to Newell and Carol. The parties executed a memorandum to reflect their intentions concerning the property:

> Meeting at Newell and Carol Simons at 1168 West Eldridge at Pocatello the agreement was that if and when the tract # 5 Home and 60 Acres was paid off to federal land Bank that Newell and Carol would be given clear title to tract # 5 Home and 60 acres. (Capitalization and punctuation in original.)

This memorandum was prepared by a non-lawyer who represented DeLila and Joel. The memorandum was signed by Newell and Carol Simons; Catherine Kalkman; N. Craig Simons; Jolene Simons and LeAnn Frandsen; and DeLila Simons, who signed for herself and Joel. Joel was present at the time but suffered from an ailment that made writing difficult.

In March of 1997, Newell and Carol were notified that the debt secured by the farmland had been paid off by DeLila. The debt had been satisfied October 19, 1995. Newell and Carol contacted DeLila and demanded that the house and sixty acres be conveyed back to them. Joel had passed away. DeLila refused to convey the property.

Newell and Carol filed a complaint on June 6, 1997, seeking specific performance of the oral agreement as outlined in the written memorandum. They claimed a right to clear title to the home and sixty acres. DeLila denied the allegations of the complaint and asserted various defenses. Newell and Carol moved for partial summary judgment which was denied.

Following the trial, the district court entered a memorandum decision and order requiring DeLila to convey the home and sixty acres to Newell and Carol. DeLila appealed.

## II.

## THE DISTRICT COURT DID NOT ERR IN ORDERING SPECIFIC PERFORMANCE OF THE AGREEMENT.

The district court determined that DeLila must deed the home and sixty acres to New-

ell and Carol pursuant to the oral agreement and written memorandum. The district court reasoned:

> It is obvious to the Court that there is a binding agreement between Joel and DeLila Simons and Newell and Carol Simons. There has not been a sufficient showing made to this Court that the agreement entered into evidence is not the agreement signed by all parties. Those who testified that they had signed the agreement, testified that their signatures appeared on the document. The testimony indicates that nearly 1500 acres were deeded by the Plaintiffs to the Defendants as a part of the agreement. After the property was deeded to the Defendants, the Defendants placed a majority of the property in the CRP program which eventually paid off the debt to Federal Land Bank.

> It would be a great injustice now to the Plaintiffs to refuse to deed back to them the house and roughly 60 acres as indicated by the agreement, especially since the individual who drafted the agreement was an agent of Joel and DeLila Simons, and she drafted the agreement for the benefit of Joel and DeLila Simons. Therefore any vagueness in the agreement should be construed most strictly against the party who was responsible for drafting the agreement.

DeLila maintains that the district court committed a number of errors in reaching this decision.

### A. Statute of Frauds

■ DeLila contends that enforcement of the agreement is barred by the Statute of Frauds on the basis that the writing was not signed by all parties, that it does not contain a proper description of the property to ascertain the exact identity of the land in question, and that the oral conditions have been left out of the agreement.

At trial DeLila admitted that there was an agreement to convey the house and "a few acres" to Newell and Carol when the indebtedness to the Federal Land Bank was paid. Newell and Carol fully performed their part of the agreement. In addition to the home and approximately sixty acres which they conveyed to Joel and DeLila, they conveyed their interest in the 1500 to 1800 acres they held jointly with Joel and DeLila. There is no doubt that DeLila and Joel agreed to reconvey the home and some acreage to Newell and Carol upon payment of the Federal Land Bank debt through the bankruptcy proceedings. The debt to the Federal Land Bank was paid, largely from funds paid for not farming the property. Absent the conveyance of Newell and Carol's interests in the property, repayment of the debt could not have been accomplished.

■ Under the doctrine of part performance, when an agreement to convey real property fails to meet the requirements of the Statute of Frauds, the agreement may nevertheless be specifically enforced when the purchaser has partly performed the agreement. *Bear Island Water Association, Inc. v. Brown,* 125 Idaho 717, 722, 874 P.2d 528, 533 (1994). "What constitutes part performance must depend upon the particular facts of each case and the sufficiency of particular acts is matter of law." *Id.* at 722, 874 P.2d at 533; (citing *Boesiger v. Freer,* 85 Idaho 551, 381 P.2d 802 (1963)). "The most important acts which constitute a sufficient part performance are actual possession, permanent and valuable improvements and these two combined." *Roundy v. Waner,* 98 Idaho 625, 629, 570 P.2d 862, 866 (1977). The acts constituting part performance must be proven by clear and convincing evidence, and they must also be definitely referable to the alleged oral contract. *Boesiger,* 85 Idaho at 557, 381 P.2d at 805.

Newell and Carol fully performed their part of the agreement which resulted in DeLila saving the entire farm property from foreclosure. All that remains is for her to perform her part of the bargain.

### B. Parol Evidence

■ DeLila contends that the agreement is lacking essential terms. She claims that parol evidence should not have been used to avoid the application of the Statute of Frauds.

The parol evidence rule provides that when a contract has been reduced to a writing that the parties intend to be a final statement of their agreement, evidence of any prior or contemporaneous agreements or understandings which relate to the same subject matter is not admissible to vary, contradict, or enlarge the terms of the written contract. *Tusch Enterprises v. Coffin,* 113 Idaho 37, 44, 740 P.2d 1022, 1029 (1987); *Chapman v. Haney Seed Co., Inc.,* 102 Idaho 26, 624 P.2d 408 (1981). Parol evidence may be considered to aid the trial court in determining the intent of the drafter of a document if an ambiguity exists. *Matter of Estate of Kirk,* 127 Idaho 817, 907 P.2d 794 (1995). A patent ambiguity is one which is evident from the face of the instrument. A latent ambiguity is not evident on the face of the instrument alone, but becomes apparent when applying the instrument to the facts as they exist. *See Williams v. Idaho Potato Starch Co.,* 73 Idaho 13, 20, 245 P.2d 1045, 1049 (1952) ("[P]arol evidence cannot be received to contradict, vary, add or to subtract from the terms of an unambiguous written agreement, but ....there are some well recognized exceptions to this rule which includes, a situation where latent ambiguity might not appear upon the face of the contract, but lies hidden in the subject to which it has reference ..."). If the language of a deed is plain and unambiguous the intention of the parties must be ascertained from the deed, and parol evidence, that is, documentary, oral or real evidence extrinsic to the deed itself, is not admissible to ascertain intent. *Currie v. Walkinshaw,* 113 Idaho 586, 589, 746 P.2d 1045, 1048 (Ct.App.1987). But inconsistencies in a deed may throw a shadow of ambiguity over an instrument, thereby warranting the introduction of parol evidence as an aid to discovering the intention of the parties. *Id.*

Parol evidence is necessary to properly construe the intent of the parties in this case and to properly identify the property to be conveyed to Newell and Carol. For example, the reference to "tract # 5" in the written memorandum is ambiguous. There is no "tract # 5." Extrinsic evidence was necessary to explain the agreement, not to vary, contradict, or enlarge its terms. The agreement executed by the parties does not set forth the entirety of the understanding between the parties. The extrinsic evidence clearly established that the property to be reconveyed was the home and acreage given to Newell by his mother in 1957. The extrinsic evidence also established that the written agreement was part of a larger agreement that included the conveyance by Newell and Carol of the 1500 to 1800 acres to Joel and DeLila—property which DeLila now owns exclusive of any interest in Newell and Carol.

## III.

## THE DISTRICT COURT DID NOT ERR IN ADMITTING EXHIBIT "A."

DeLila argues that it was error to admit Exhibit "A," which is the memorandum agreement, because the court allowed a duplicate, instead of the original, to be introduced into evidence. DeLila testified as follows:

Q: Now you have Exhibit "A" in your hand, do you not?

A: Uh huh.

Q: Does that document appear to you to be the document or agreement that Irene Beard drafted up that day?

A: No. I have records that it said the house and a few acres in the record that I kept personally for our own record.

Q: So you think that it should say the house and a few acres rather than house and 60 acres?

A: Right.

Q: And where would the words a few acres be written to your memory?

A: It would be just this, replace this part right here.

Q: So are you suggesting then that someone has altered the original document?

A: From what I remember, yes.

Another witness, LeAnn Frandsen, thought that the items in the document had been altered, and different language inserted after the meeting on February 6, 1987. DeLila argues that a genuine question exists regarding the authenticity of the document, and this Court should overturn the district

court's decision upholding the validity of Exhibit "A."

Idaho Rule of Evidence 1003 states:

A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity or continuing effectiveness of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.

The district court admitted the memorandum into evidence pursuant to I.R.E. 1003. The court stated:

[S]he [Catherine Simons Kalkman] has testified that she was present and the other people present and indicated that the agreement contains what they all discussed and agreed to that night and I'm sure there's probably other witnesses that will be testifying to similar things.

But, based on that position I believe it's [Exhibit "A"] been properly identified and under Rule 1002 it requires an original except as otherwise provided in the Rules and Rule 1003 states that a duplicate is admissible to the extent as an original unless there's a genuine question raised as to the authenticity or continuing effectiveness and then two, in the circumstances would it be unfair to admit the duplicate. And the Court feels that this is an agreement signed by the parties, as well as other people, and therefore going to overrule [Defense Counsel's] objection and allow Exhibit A to be admitted.

While DeLila maintains the instrument was altered, Newell and Carol introduced testimony from multiple sources confirming the authenticity of the document. There is substantial, competent evidence to support the decision of the district court that Exhibit A is an authentic duplicate of the original agreement.

## IV.

## THE DISTRICT COURT PROPERLY INTERPRETED IDAHO CODE § 9–202.

■ DeLila contends that the information within this litigation involves communications and agreements which occurred prior to the death of Joel Simons. DeLila argues that Newell and Carol are seeking to enforce a claim against the estate of Joel Simons. In *Argyle v. Slemaker*, 99 Idaho 544, 585 P.2d 954 (1978), this Court held that I.C. § 9–202 bars, (1) certain persons from testifying; (2) in a specific action; (3) as to certain communications. DeLila maintains that Newell and Carol's testimony is based on communications made by the late Joel Simons, and this testimony should not have been allowed because the extent of the communication was not documented or transcribed.

Idaho Code § 9–202 states in relevant part:

9–202. **Who may not testify.**—The following persons cannot be witnesses:

3. Parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted against an executor or administrator, upon a claim or demand against the estate of a deceased person, as to any communication or agreement, not in writing, occurring before the death of such deceased person.

I.C. § 9–202 prohibits a party from making a claim against an estate from testifying as to any unwritten communication with the deceased. *Lunders v. Estate of Snyder*, 131 Idaho 689, 963 P.2d 372 (1998). Newell and Carol testified as to the contents of the memorandum, but not to the communications made by Joel. The district court did not err in determining that Newell and Carol could testify.

## V.

## THE ACTION IS NOT BARRED BY THE STATUTE OF LIMITATIONS.

■ DeLila argues that the statute of limitations commenced on February 6, 1987, the date of the signing of the document, and expired on February 6, 1992, pursuant to Idaho Code § 5–203. Newell and Carol were not in possession of the real property within five years prior to the commencement of this action. Consequently, according to DeLila,

this action should be barred for failure to initiate proceedings before the statute of limitations had run.

Idaho Code § 5–216 states in relevant part:

**Action on written contract.**—Within five (5) years:

An action upon any contract, obligation or liability founded upon an instrument in writing.

Idaho Code § 5–217 states:

**Action on oral contract.**—Within four (4) years:

An action upon a contract, obligation or liability not founded upon an instrument of writing.

The district court addressed the issue of statute of limitations as follows:

It seems more appropriate that the 5 year statute of limitations for a written contract as outlined in Idaho Code § 5–216, or the 4 year statute of limitations for enforcement of an oral contract as outlined in Idaho Code § 5–217 would be more appropriate. These statutory time limits do not begin to run until a cause of action has accrued. *Rawleigh Medical Co. v. Atwater,* 33 Idaho 399, 195 P. 545 (1921), *Little v. Emmett Irrigation Dist.,* 45 Idaho 485, 263 P. 40 (1928). Therefore, at the earliest, the statute of limitations in this action began to run when the mortgages or loans encumbrancing the property at issue in this case were extinguished, thereby fulfilling the condition and requiring the Defendant to convey the house and 60 acres in question to the Plaintiffs. This appears to have occurred in October 1995 at the earliest. Therefore, the Plaintiffs' claim is not barred by the statute of limitations since it was timely filed.

The district court's reasoning is correct. The time for initiating this action did not accrue until October of 1995. Therefore, the claim filed by Newell and Carol was not barred by any applicable statute of limitations.

## VI.

## THE CASE IS REMANDED TO THE DISTRICT COURT ON THE QUESTION OF ATTORNEY FEES.

In the district court's memorandum decision and order, dated August 18, 1998, the court ordered costs and attorney fees to Newell and Carol. The district did not specify the applicable statute under which attorney fees were awarded. The complaint and amended complaint requested attorney fees pursuant to Idaho Code §§ 12–120 and 12–121. These are two sections upon which the district court may have based its award of attorney fees.

■ Idaho Code § 12–120 provides that attorney fees are awarded to prevailing parties. *Inland Group of Companies v. Obendorff,* 131 Idaho 473, 959 P.2d 454 (1998). The amount of attorney fees to be awarded under I.C. § 12–120 is committed to the trial court's discretion. *Record Steel & Const. v. Martel Const.,* 129 Idaho 288, 923 P.2d 995 (1996). However, the district court did not specify whether it relied upon Idaho Code § 12–120.

■ Under Idaho Code § 12–121 attorney fees "may be awarded by the court only when it finds, from the facts presented to it, that the case was brought, pursued or defended frivolously, unreasonably or without foundation." I.R.C.P. 54(e)(1). Moreover, "[a]ttorney fees are not appropriate under I.C. § 12–121 and I.R.C.P. 54(e) unless all claims brought are frivolous and without foundation." *Bingham v. Montane Resource Associates,* 133 Idaho 420, 987 P.2d 1035 (1999). The decision to award attorney fees under I.C. § 12–121 rests in the sound discretion of the district court and will be only reversed where there is an abuse of discretion. *Id.;* (*Sun Valley Hot Springs Ranch v. Kelsey,* 131 Idaho 657, 664, 962 P.2d 1041, 1048 (1998)). In reviewing an exercise of discretion, this Court must consider (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3)

whether the trial court reached its decision by an exercise of reason. *Sun Valley Shopping Center v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). The record does not establish that the district court applied the standards set forth in *Sun Valley Shopping Center* in exercising its discretion to award attorney fees. The case is remanded for the district court to consider the claim for attorney fees and to specify the basis of any award or denial of an award.

## VII.

## CONCLUSION

The district court's decision granting specific performance is affirmed. The award of attorney fees to Newell and Carol is vacated and remanded for further consideration. Newell and Carol Simons are awarded costs on appeal.

Chief Justice TROUT and Justices SILAK, WALTERS and KIDWELL concur.