2005 SD 108

**Bill HAHNE, Plaintiff and Appellant,**

v.

**Clarence W. BURR, Clarence W. Burr, Trustee of Clarence W. Burr 1994 Living Trust, Defendant, Third–Party Plaintiff and Appellee,**

and

**Mark Burr, Defendant and Third–Party Plaintiff,**

v.

**Steve Schneider, Third– Party Defendant.**

Nos. 23448, 23461.

Supreme Court of South Dakota.

Considered on Briefs Aug. 30, 2005.

Decided Oct. 26, 2005.

Thomas M. Tobin of Tonner, Tobin and King, Aberdeen, South Dakota, Attorneys for appellant.

Reed Rasmussen of Siegel, Barnett and Schutz, Aberdeen, South Dakota, Attorneys for appellee.

ZINTER, Justice.

[¶1.] A dispute arose between Bill Hahne and Clarence Burr concerning an oral agreement for the sale of land. Hahne sued for specific performance of the agreement. The trial court denied relief, entering summary judgment against Hahne because of the statute of frauds. Hahne appeals the statute of frauds determination, and Burr appeals (by notice of

review) the trial court's refusal to grant Rule 11 sanctions. We affirm the trial court on all issues.

## Facts and Procedural History

[¶2.] On February 23, 2000, Hahne and Steve Schneider (lessees) entered into a three-year lease of real property with Burr (lessor). At the end of the lease, Hahne and Burr discussed a possible sale of the land. Although there is a dispute about the content of those discussions and who initiated them, there is no dispute that the parties discussed a sale to Hahne. Although money was subsequently exchanged, some closing documents were drawn, and further conversations occurred concerning the sale, Burr ultimately declined to sell the property, and this suit was commenced.

[¶3.] Under Hahne's version of the facts, by December 2002, Burr and Hahne orally agreed to all aspects of the sale, including the price. Later that month, the parties realized that a sale could not be completed before January 1, 2003, and therefore, Hahne agreed to pay further rent for the period of time between the first of the year and the eventual closing.

[¶4.] In early January 2003, purportedly upon Burr's request, Hahne retained attorney Andrew Aberle to prepare closing documents. Hahne asserts that Aberle talked to Burr and that all of the terms of the agreement were verified. Aberle also prepared letters, a deed, and a certificate of value, which he sent to Burr to close the sale. Hahne also tendered a $15,000 check, which he contends was partially for rent and partially for a down payment on the land.[1] Hahne finally asserts that, during this period of time, he did not purchase or lease other land needed in his farming operation because of his reliance on the agreement.

[¶5.] However, in February 2003, Burr's grandson, allegedly acting as Burr's agent, sent Hahne an e-mail informing him that Burr had decided not to sell the property. Hahne sued Burr for specific performance of the alleged agreement. The trial court granted summary judgment in favor of Burr based upon the statute of frauds. The trial court denied Burr's request for sanctions and attorney's fees. Hahne appeals the following issues:

(1) Whether there were sufficient writings regarding the sale of real estate to satisfy the statute of frauds;

(2) Whether the trial court erred in granting summary judgment on the issues of partial performance and estoppel.

By notice of review, Burr appeals the following issue:

(3) Whether the trial court erred in denying Burr's request for Rule 11 sanctions and attorney's fees.

## Analysis and Decision

[¶6.] In reviewing summary judgment, "we decide only whether genuine issues of material fact exist and whether the law was correctly applied. If any legal basis exists to support the trial court's ruling, we will affirm." *Schulte v. Progressive N. Ins. Co.*, 2005 SD 75, ¶5, 699 N.W.2d 437, 438 (citations omitted). All reasonable inferences "must be viewed in favor of the non-moving party." *Northstream Invs., Inc. v. 1804 Country Store Co.*, 2005 SD 61, ¶11, 697 N.W.2d 762, 765 (citation omitted). Furthermore, "[t]he burden is on the moving party to clearly

1. Hahne wrote two checks, both containing a memo restriction indicating the check was either for the lease or the down payment. Burr rejected the first check because it was not made out to the attorney's trust account. The second check was rejected because of the memo restriction; more specifically, Burr did not want the act of endorsing the check to constitute an admission that the check was for a down payment.

show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law." *Id.* (citations omitted).

### Sufficiency of Writings to Bind Burr

[¶ 7.]Under the statute of frauds, a contract for the sale of land must be in writing to be enforceable. *Jacobson v. Gulbransen,* 2001 SD 33, ¶ 15, 623 N.W.2d 84, 88. The statute, SDCL 53–8–2, provides in relevant part:

The following contracts are not enforceable by action unless the contract or some memorandum thereof is in writing and subscribed by the party to be charged or his agent, as authorized in writing:

. . .

(3) An agreement for sale of real estate or an interest therein, or lease of the same, for a period longer than one year. However, this does not abridge the power of any court to compel specific performance of any agreement for sale of real estate in case of part performance thereof. . . .

We have stated that "[t]he role of the statute of frauds is evidentiary in nature, and serves to remove uncertainty by requiring 'written evidence of an enforceable obligation.'" *Harriman v. United Dominion Indus., Inc.,* 2005 SD 18, ¶ 15, 693 N.W.2d 44, 48 (citations omitted).

[¶ 8.]Although there is a significant dispute whether there was an agreement, for purposes of summary judgment we assume there was an oral agreement to sell the real estate. With respect to the sufficiency of writings, Hahne contends that his attorney, Aberle, personally verified all of the terms of the contract with Burr. Hahne also points out that Aberle drafted a letter forwarding a deed and certificate of value attempting to close the transaction. Hahne finally relies upon an e-mail

sent by Burr's alleged agent reflecting an awareness that a sale was pending.

[¶ 9.]However, Aberle's conversations are not writings, and Hahne did not produce any writing signed by Burr (or his agent) *confirming* an agreement to the sale of the land. This is significant because an agreement for the sale of real property is not enforceable unless the document is "subscribed by the party to be charged." SDCL 53–8–2; *Wiggins v. Shewmake,* 374 N.W.2d 111, 114 (S.D. 1985). Here, Aberle was not the agent of the party to be charged, and the e-mail, even if signed by Burr's agent, did not confirm an agreement. On the contrary, the e-mail expressly disavowed Burr's intent to sell the property. Therefore, the trial court correctly determined that these conversations and writings by others were not sufficient to satisfy the statute of frauds.

### Statute of Frauds Exceptions–Partial Performance and Estoppel

[¶ 10.] Even if there is no agreement in writing, SDCL 53–8–2(3) allows a "court to compel specific performance of any agreement for sale of real estate in case of part performance. . . ." SDCL 53–8–2(3). Estoppel may also justify specific performance.

An oral promise to convey real property is enforceable by specific performance where the grantee *has partially performed* or *has acted in reliance upon the promise* of the grantor in such manner that it would invoke a fraud or prejudice against the grantee not to grant specific performance thereon.

*Durkee v. Van Well,* 2002 SD 150, ¶ 21, 654 N.W.2d 807, 815 (citations omitted).

### Partial Performance

[¶ 11.] Hahne asserts that a number of actions constituted partial performance. He first relies on his "down pay-

ment." We initially note that there is a dispute whether the $15,000 Hahne paid to Burr was a down payment on the sale or whether it was a lease payment for 2003.[2] However, even assuming that it was a down payment, this Court has long held that "payment of the whole or a part of the purchase price is not sufficient in itself to take a case out of the operation of the statute of frauds." *Boekelheide v. Snyder,* 71 S.D. 470, 473, 26 N.W.2d 74, 75 (1947). *See also Ells v. Ells,* 245 N.W.2d 498, 500 (S.D.1976) (stating that payment of a portion of the purchase price is "an act that has long been held insufficient to take a contract out of the ... statute of frauds") (citation omitted). Therefore, the trial court correctly concluded that the payment, in and of itself, "would not constitute partial payment or partial performance of the purchase price."

[¶ 12.] Hahne recognizes this rule and, therefore, contends that his possession of the land must also be considered. This Court has indicated "that the most important acts to constitute sufficient part performance are actual possession and permanent improvements made on the land." *Williams v. Denham,* 83 S.D. 518, 523, 162 N.W.2d 285, 288 (1968) (citation omitted). However, in this case Hahne's possession of the land is irrelevant because he was in continued possession after expiration of a written lease. *See Skjoldal v. Myren,* 86 S.D. 111, 119, 191 N.W.2d 809, 813 (1971) (concluding that where an option to purchase property had expired, but the lessee retained possession and farmed the land on a crop share basis, partial

performance had not been established); *Shaw v. George,* 82 S.D. 62, 66, 141 N.W.2d 405, 407 (1966) (stating that where one party was in possession under an existing lease, the continued possession could not be regarded as an act of partial performance). Furthermore, there is no evidence Hahne made permanent improvements to the property. Therefore, we agree with the trial court that Hahne's possession of the land was not "sufficient to constitute partial performance because ... [h]e was ... there under a written lease and [thus,] he was a holdover tenant."

[¶ 13.]Hahne next contends that he partially performed because he incurred attorney and title policy fees in an attempt to close the transaction. However, in order for an act by the plaintiff "to be sufficient to constitute part performance, it 'must be unequivocally referable to the contract.'" *Morton v. Lanier,* 311 Mont. 301, 55 P.3d 380, 385 (2002) (citations omitted).[3] What conduct constitutes partial performance will depend on the facts of each case. *Nelson v. Elway,* 908 P.2d 102, 119 (Colo.1995); *Veum v. Sheeran,* 95 Minn. 315, 104 N.W. 135, 137 (1905). And, whether those acts are sufficient to constitute partial performance is a matter of law to be decided by the court. *Simons v. Simons,* 134 Idaho 824, 11 P.3d 20, 23 (2000).

[¶ 14.]Here, the trial court concluded that Hahne hired the attorney to take care of Hahne's personal interests, and therefore, the retention of the attorney was not partial performance of the *terms and con-*

---

2. Fifteen thousand dollars was the annual lease payment required under the parties' lease. There is no dispute that the $15,000 was ultimately used for the lease payment in 2003.

3. *See also Simons v. Simons,* 134 Idaho 824, 11 P.3d 20, 23 (2000) (stating that "acts constituting part performance must be ... defi-

nitely referable to the alleged oral contract"); *Pollmann v. Belle Plaine Livestock Auction, Inc.,* 567 N.W.2d 405, 409 (Iowa 1997) (stating that "[p]art performance will remove a real estate contract from the statute of frauds only when the acts constituting partial performance are referable exclusively and unequivocally to the contract").

*ditions of the contract.* The trial court correctly noted:

I think the partial performance has to relate to the terms and conditions of the agreement. I think the fact that Bill Hahne went out and hired an attorney was not any allegation even by Bill Hahne that that was part of the terms and conditions of the agreement. ... [H]e hired Andy Aberle for his own personal needs to take care of the legal matters. So I don't believe that hiring Andy Aberle would constitute partial performance of the terms and conditions of the contract.

[¶ 15.]Finally, with respect to the title policy, the trial court noted that according to a letter from Aberle to Burr, it was unknown who was to pay this fee. Based upon this uncontested evidence, the trial court found that there was no agreement concerning who was to pay for the title policy. We agree. A review of Aberle's letter reflects that he was only asking Burr how he wanted to approach the payment of the title policy. This did not reflect an agreement as to who would pay. Furthermore, as we noted in *Williams,* 83 S.D. at 523, 162 N.W.2d at 288, neither ordering abstracts (which is analogous to the procurement of a title policy) nor drawing up a contract constitutes partial performance.

[¶ 16.]For all the foregoing reasons, the trial court correctly determined that the partial performance exception to the statute of frauds was not applicable.

### Estoppel

[¶ 17.]Hahne contends that Burr should be estopped from denying that a contract existed between the parties. Hahne relies on equitable estoppel and promissory estoppel. There are four elements of equitable estoppel:

1.False representations or concealment of material facts must exist; ...

2.The party to whom it was made must have been without knowledge of the real facts; ...

3.The representations or concealment must have been made with the intention that it should be acted upon; and

4.The party to whom it was made must have relied thereon to his prejudice or injury.

*Cleveland v. Tinaglia,* 1998 SD 91, ¶ 38, 582 N.W.2d 720, 727 (citations omitted).

[¶ 18.]"[P]romissory estoppel may be invoked where a promisee alters his position to his detriment in the reasonable belief that a promise would be performed." *Canyon Lake Park, LLC v. Loftus Dental, P.C.,* 2005 SD 82, ¶ 38, 700 N.W.2d 729, 739 (citing *Garrett v. BankWest, Inc.,* 459 N.W.2d 833, 848 (S.D. 1990)). The three elements of promissory estoppel are:

1) the detriment suffered in reliance must be substantial in an economic sense; 2) the loss to the promisee must have been foreseeable by the promisor; and 3) the promisee must have acted reasonably in justifiable reliance on the promise made.

*Id.* Estoppel is not applicable if any of these elements are lacking or have not been proven by clear and convincing evidence. *Century 21 Associated Realty v. Hoffman,* 503 N.W.2d 861, 866 (S.D.1993) (citations omitted).

[¶ 19.]Assuming that a promise or false representation was made, these two forms of estoppel have a common element. Hahne was required to prove that he detrimentally relied on the promise or false representation. Hahne contends that he established this element because he did not look for other land in reliance on the agreement. Hahne also argues that he had previously reduced the size of his cattle herd and that by securing Burr's land,

he would have been able to expand his herd again. However, Hahne has failed to direct us to any evidence to support these arguments. Moreover, a letter from Hahne's lawyer to the title company indicates that Steven, Todd, and Kelly Landis, not Hahne, were actually purchasing the property from Burr. The title policy also indicated that the Landises were to become the insureds under an "owner's" policy. Because the evidence referenced on appeal indicates that Hahne was not ultimately purchasing the land, he failed to establish detrimental reliance on any promise or representation.

### Rule 11   Sanctions

[¶ 20.]By notice of review, Burr contends that the trial court erred in failing to order sanctions and attorney's fees under SDCL 15–6–11. Burr argues that Hahne misled the trial court by pursuing the action for specific performance without revealing that the Landises were the true purchasers of Burr's land.

[¶ 21.]SDCL 15–6–11(a) provides:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading, motion, or other paper and state his address. Unless otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, and exhibits or attachments thereto, or other paper; that to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose,

such as to harass, embarrass another party or person, or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant.

A violation of 15–6–11(a) triggers sanctions, including attorney fees.

If a pleading, motion, exhibits, or attachments thereto, or other paper is signed or filed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed or filed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

SDCL 15–6–11(b).

[¶ 22.]Appeals under "Rule 11 ... are reviewed under an abuse of discretion standard." *Prunty Const., Inc. v. City of Canistota*, 2004 SD 78, ¶ 28, 682 N.W.2d 749, 761 (citation omitted). An "[a]buse of discretion is discretion not justified by, and clearly against, reason and evidence." *Id.* (citation omitted).

[¶ 23.]Burr's motion for sanctions was grounded upon the fact that Hahne never disclosed that he was not the actual or ultimate purchaser of the property. Burr points out that although the complaint and amended complaint indicated that Hahne was the purchaser, the January 14, 2003 letter authored by his attorney clearly stated that Steven, Todd, and Kelly Landis were purchasing the land from Burr. This letter even included statements indicating the amount to be paid for the land and that the Landises would be obtaining financing through Dacotah Bank in Mobridge. The letter further requested that

the owner's and mortgagee's policies, which would be paid for by either Hahne or the "Landis brothers," be written and sent to Dacotah Bank. Burr finally points out that a title search was conducted on behalf of the Landis brothers, not Hahne.

[¶ 24.]In declining to award attorney's fees and sanctions, the trial court acknowledged this evidence but relied on authorities holding that an individual may file an action based on a novel theory of law or on the belief that "they can change the law under some set of facts or circumstances." Furthermore, the record reflects some factual confusion in that Hahne's trial attorney did not know of the owner's title policy because only Hahne's transactional attorney, Andy Aberle, worked on the policy and retained possession of the documents until a few days before the case was heard by the trial court. Considering this evidence and the fact that it is not clear whether Hahne was purchasing for the Landises or whether the Landises were the direct purchasers, the trial court did not abuse its discretion in declining to award sanctions and attorney's fees.

*Appellate Attorney Fees*

[¶ 25.]Burr seeks appellate attorney fees under SDCL 15–6–11(d) and SDCL 15–26A–87.3. These statutes authorize reasonable attorney fees and costs for a successful Rule 11 applicant who must defend the award on appeal. However, Burr was not a successful applicant at trial. Therefore, he is not entitled to attorney's fees and costs on appeal.

[¶ 26.]Affirmed.

[¶ 27.]GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.