# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 43343

| | |
|---|---|
| MARIAN G. HOKE, an individual, and MARIAN G. HOKE as trustee of THE HOKE FAMILY TRUST U/T/A dated February 19, 1997, | ) ) ) ) ) Boise, August 2016 Term |
| Plaintiff-Respondent, | ) ) 2016 Opinion No. 142 ) ) Filed: December 8, 2016 |
| v. | ) ) Stephen W. Kenyon, Clerk ) |
| NEYADA, INC., a Nevada corporation, | ) ) |
| Defendant-Appellant. | ) |

_____

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Hon. George A. Southworth, District Judge.

The district court's judgment and award of attorney's fees are <u>vacated</u>. This case is <u>remanded</u> for further action consistent with this Opinion. Costs on appeal are <u>awarded</u> to appellant.

Brian Webb Legal, Eagle, attorney for appellant. Brian L. Webb argued.

Morrow & Fisher, PLLC, Nampa, attorneys for respondent. Laura E. Burri argued.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

NeYada, Inc. ("NeYada"), a Nevada corporation, appeals from the district court's order granting summary judgment to Respondent, Marian Hoke ("Hoke"), and declaring a lease (the "Lease") and an option to purchase (the "Option") between the parties invalid and unenforceable. In November 2014, Hoke executed the Lease and Option with NeYada for the transfer of an interest in real property located in Canyon County, Idaho. A mere two months later, Hoke filed suit seeking to invalidate the Lease and the Option alleging, *inter alia*, that neither document complied with the statute of frauds. Both parties moved for summary judgment on that issue. The district court held that the Lease and Option (together, the "Contract") were invalid and

1

unenforceable because neither complied with the statute of frauds. Further, the district court held that the doctrine of part performance did not require the enforcement of the otherwise invalid Contract.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Hoke, an elderly widow living in Canyon County, Idaho, is the sole trustee of the Hoke Family Trust. The Hoke Family Trust owns the property at issue, which is located at 16867 Portner Road, Nampa, Idaho (the "Property"). The Property consists of fourteen (14) mobile home lots and thirteen (13) mobile homes situated on 1.96 acres of land.[1]

The transaction between NeYada and Hoke was structured as a lease with an option to purchase. The Lease and the Option were executed on November 7, 2014. The Lease was "subject to and contingent upon the Lessor entering into a written agreement with NeYada, Inc., giving them the right to purchase the subject property." The Option, a separate document, granted NeYada the right to purchase the Property for $200,000, less a credit of $20 and a "credit for 94.5% of all monthly lease payments paid to [Hoke] under the separate Land Lease . . . ."

Upon the execution of the Lease and Option, an escrow account was opened with Idaho Escrow. The escrow instructions contemplated that NeYada would pay Hoke $800 a month towards the principal of $200,000 beginning on December 15, 2014. Hoke and NeYada further agreed that Hoke owed NeYada $1,610 for prorated November rent, which she had already collected from tenants.

On November 15, 2014, Hoke turned over actual possession of the Property to NeYada along with the bills of sale for the two mobile homes. Hoke also paid NeYada $1,610, per their agreement. NeYada began managing the Property. It posted late notices and new leases on tenants' doors, opened new accounts, paid past-due taxes, registered the mobile homes in its name, and hired a property management company. In sum, by executing the Lease and the Option, NeYada became the landlord for the tenants of the Property, but still paid rent to Hoke.

Shortly following the execution of the Contract, Hoke became concerned about the transaction. She consulted with an attorney, and on December 1, 2014, Hoke's counsel mailed a letter to NeYada explaining that the Lease and Option were null and void because each, among other deficiencies, violated the statute of frauds. Further, the letter demanded that NeYada cease

---

[1] Hoke owned two of the thirteen mobile homes on the Property. Those two mobile homes were sold to NeYada in the transaction. However, after invalidating the Contract, the district court ordered NeYada to return the mobile homes to Hoke.

and desist from any further actions pertaining to the Property. Hoke instructed the tenants of the mobile homes on the Property to pay rent to her directly.

Hoke filed her complaint on January 12, 2015, seeking to invalidate the Lease and Option for, *inter alia*, violation of the statute of frauds. An answer and counterclaim were filed by NeYada on February 25, 2015. Therein, NeYada sought to enjoin Hoke from accepting rent from the mobile home tenants, claimed that Hoke breached the Lease and Option, and sought a declaration that the Lease and Option were valid and enforceable.

The parties each filed a motion for summary judgment. NeYada argued, *inter alia*, that the property descriptions in the Lease and the Option complied with the statute of frauds, and alternatively, that the doctrine of part performance took the matter outside of the statute of frauds. Conversely, Hoke argued, *inter alia*, that the legal descriptions attached to the Lease and Option were inadequate and void. On March 26, 2015, the parties met with the district court and agreed to submit additional briefing on the issue of whether the legal descriptions of the Property in the Lease and the Option were sufficient.

After hearing oral argument on the parties' competing motions for summary judgment, the district court held that the Lease and Option were invalid and void due to noncompliance with the statute of frauds. Specifically, the district court held that the descriptions of the Property in the Lease and Option were inadequate. Further, the district court held that the doctrine of part performance did not require the enforcement of the otherwise invalid Contract because the claimed performance—NeYada's rent payment—did "not constitute fully [sic] or even a substantial portion of the payments to be made under the agreements."

On April 13, 2015, NeYada filed a motion to reconsider and to set aside judgment arguing that regardless of whether the Option was enforceable, the Lease should be enforced because "the standard to comply with the statute of frauds for a lease is entirely less strict than the legal description required for . . . an option." The district court denied the motion to reconsider, holding that the Lease and Option comprised a single transaction. The district court reasoned that because the Option was insufficient to satisfy the statute of frauds, the Lease was also invalid under the statute of frauds.

On June 2, 2015, Hoke filed a motion for turnover of the mobile home titles. NeYada appealed the judgment and the denial of the motion to reconsider on June 16, 2015. Thereafter, the district court granted Hoke's request for costs and attorney's fees, and also ordered NeYada

to turn over the two mobile home titles to Hoke. In response, NeYada filed an amended notice of appeal.

### III. ISSUES ON APPEAL

**1.** Whether the district court erred by failing to specifically enforce the Contract via the doctrine of part performance.

**2.** Whether the district court erred in awarding Hoke attorney's fees and costs.

### IV. STANDARD OF REVIEW

> The standard of review on appeal from an order granting summary judgment is the same standard that is used by the district court in ruling on the summary judgment motion. *Baxter v. Craney*, 135 Idaho 166, 170, 16 P.3d 263, 267 (2000). All disputed facts are to be liberally construed in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party. *Eagle Water Company, Inc. v. Roundy Pole Fence Company, Inc.*, 134 Idaho 626, 628, 7 P.3d 1103, 1105 (2000). Summary judgment is appropriate only when the pleadings, depositions, affidavits and admissions on file show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. I.R.C.P. 56(c).

*Garner v. Bartschi*, 139 Idaho 430, 433, 80 P.3d 1031, 1034 (2003).

### V. ANALYSIS

**A. The district court erred by failing to specifically enforce the Contract via the doctrine of part performance.**

The parties devoted a significant amount of briefing to the issue of whether the description of the Property in the Lease and Option complied with the statute of frauds. However, we decline to address that issue because this case is resolved by the application of the doctrine of part performance. Accordingly, we do not express any opinion as to the district court's conclusion regarding the adequacy of the Property description found in the Lease, Option, or combination thereof.

In its memorandum decision and order, the district court held that NeYada's actions did not qualify as part performance sufficient to take the matter outside of the statute of frauds. The district court referenced three instances that would weigh in favor of a finding of part performance: (1) the transfer of actual possession of the Property; (2) Hoke paying NeYada $1,610 (November's prorated rent from the Property's mobile home tenants); and (3) NeYada's lease payments to the escrow account. However, based primarily on the fact that Hoke's payment of one month's rent—of a five year lease—did "not constitute fully [sic] or even a substantial

4

portion of the payments to be made under the agreements," the district court concluded that part performance had not occurred. We disagree.

Idaho Code section 9-504 provides that the statue of frauds "must not be construed to . . . abridge the power of any court to compel the specific performance of an agreement, in case of part performance thereof." I.C. § 9-504.

> Under the doctrine of part performance, when an agreement to convey real property fails to meet the requirements of the Statute of Frauds, the agreement may nevertheless be specifically enforced when the purchaser has partly performed the agreement. *Bear Island Water Association, Inc. v. Brown*, 125 Idaho 717, 722, 874 P.2d 528, 533 (1994). "What constitutes part performance must depend upon the particular facts of each case and the sufficiency of particular acts is matter of law." *Id*. at 722, 874 P.2d at 533; (citing *Boesiger v. Freer*, 85 Idaho 551, 381 P.2d 802 (1963)). "The most important acts which constitute a sufficient part performance are actual possession, permanent and valuable improvements and these two combined." *Roundy v. Waner*, 98 Idaho 625, 629, 570 P.2d 862, 866 (1977).

*Simons v. Simons*, 134 Idaho 824, 827, 11 P.3d 20, 23 (2000). Acts constituting part performance must be specifically referable to the alleged agreement. *Id.* (citing *Boesiger v. Freer*, 85 Idaho 551, 557, 381 P.2d 802, 805 (1963)).

In *Simons*, the appellants and respondents were joint owners of certain property deeded to them by their mother. 134 Idaho at 826, 11 P.3d at 22. The property was subject to foreclosure. *Id.* The appellants agreed to quitclaim their interest in the property to the respondents, who would then file Chapter 12 bankruptcy to save the property. *Id.* The agreement included an understanding that, upon the satisfaction of the debt, the respondents would convey part of the property back to the appellants. *Id.* Ten years later, the appellants were notified that the debt was satisfied. *Id.* However, the respondents refused to convey part of the property back. *Id.* Before this Court, the respondents argued that the agreement was barred by the statute of frauds due to, *inter alia*, an inadequate property description. *Id.* at 827, 11 P.3d at 23. Notwithstanding the statute of frauds argument, this Court applied the doctrine of part performance. *Id.* In doing so, this Court noted that the appellants had fully performed their part of the agreement. *Id.* Accordingly, this Court affirmed the district court's specific enforcement of the agreement. *Id.*

The district court erred in holding that NeYada's actions did not qualify as part performance. Case law clearly indicates that the action of the purchaser may remove a contract from the strictures of the statute of frauds. *Bear Island Water Ass'n, Inc. v. Brown*, 125 Idaho 717, 722, 874 P.2d 528, 533 (1994); *Hoffman v. S V Co., Inc.*, 102 Idaho 187, 191, 628 P.2d 218,

5

222 (1981). Yet, the district court's sole focus was on the seller, Hoke. Specifically, the district court considered only Hoke's turning over of possession, payment of November's rent, and acceptance of lease payments. The district court should have considered NeYada's actions; namely, opening an escrow account, managing the Property, and—most importantly—receiving actual possession of the Property. All that remained to be done, under the agreement, was to make monthly payments and to transfer title upon satisfaction of the purchase price. Both of which were not scheduled to occur until a later time. Therefore, at the time this lawsuit was initiated, NeYada's performance was essentially complete. Indeed, at oral argument, Hoke's counsel admitted that NeYada took actual possession of the Property, and there was "probably nothing" more NeYada could have done. Such an admission undercuts Hoke's argument against the application of the doctrine of part performance. NeYada, like the appellants in *Simons*, satisfied its obligations. All that remained to be done was to make monthly payments and to convey title. Accordingly, we vacate the district court's holding that NeYada's actions did not qualify as part performance.

## B.    Attorney's Fees

Hoke can no longer be considered the prevailing party for purposes of awarding costs and attorney's fees because we vacate the district court's decision regarding part performance. Accordingly, the district court's award of attorney's fees and costs is vacated.

## VI. CONCLUSION

We vacate the district court's holding regarding NeYada's part performance, vacate the district court's award of attorney's fees, and remand the case to the district court for further action consistent with this Opinion.

Justices EISMANN, BURDICK and HORTON CONCUR.

Chief Justice J. JONES, specially concurring.

I fully concur in the Court's opinion but wish to comment on the adequacy of the property description in the Option to Purchase (Option). The Option states that it pertains to the following-described property:

Legal Description to be attached as Exhibit "A"

That certain mobile home park known as <u>Hoke</u> Mobile Home Park, consisting of <u>14</u> mobile home lots, and <u>13</u> mobile homes, as more fully described in Exhibit "A" attached hereto.

6

Exhibit "A" reads: 07-3N-2W NW PORTNER SUB TX2 IN LT 9,, TX 05292 & 05293 IN BLK 9.

Those unfamiliar with property descriptions could probably not make heads or tails out of this description. However, persons familiar with the various ways of describing property would be able to determine that the subject property was located within Section 7 of Township 3 North and Range 2 West. It might have been helpful if the description had indicated the county in which Section 7 was located and the identity of the meridian that the range was west of, but those items of information are not essential. There is only one Section 7 located in Township 3 North and Range 2 West in the State of Idaho and that Section 7 is located in Canyon County. The description indicates that the property subject to the Option is located in Portner Subdivision, more specifically tax lot 2 in lot 9 of the subdivision and tax lots 05292 and 05293 in block 9 of the subdivision. To obtain the exact descriptions of these tax lots, a person could visit the Canyon County Assessor's office or utilize the geographic information system on the County Assessor's website. The geographic information system displays the exact location and dimensions of the three tax lots, shows that they are combined into parcel number 25544000 0, states they are located in Portner Subdivision at 16867 Portner Rd., and indicates that the three-lot parcel is 1.963 acres in area.[2]

The description of the property in the Option is adequate to meet the requirements of the statute of frauds. In *Ray v. Frasure*, 146 Idaho 625, 629, 200 P.3d 1174, 1178 (2009), we said that "[a] description of real property must adequately describe the property so that it is possible for someone to identify 'exactly' what property the seller is conveying to the buyer." Although the Option does not provide the metes and bounds descriptions of the tax lots, this Court has indicated that a description that makes reference to "any record or external or extrinsic description from which a complete description could be had" can satisfy the statutes of frauds. *Allan v. Kitchen*, 16 Idaho 133, 143, 100 P. 1052, 1055 (1909). "A description contained in a deed will be sufficient so long as quantity, identity or boundaries of property can be determined from the face of the instrument, or by reference to extrinsic evidence to which it refers." *Ray*, 146 Idaho at 629, 200 P.3d at 1178. "In order to make use of extrinsic evidence in a real estate

---

[2] The Lease Agreement, which is specifically referenced in the Option, states the area of the mobile home park to be 1.96 acres and indicates that it is located in Portner Subdivision in Nampa, Idaho. The Lease Agreement lists the 13 mobile homes located in Hoke Mobile Home Park, specifying that they are all located on parcel number 25544000 0. The geographic information system shows the exact locations of the mobile homes on that parcel.

contract, the parties merely need to reference the extrinsic evidence in their contract or deed." *Id.* at 630, 200 P.3d at 1179.

During my years of private law practice, I prepared many real estate purchase contracts, including options to purchase. It was always preferable to obtain a metes and bounds description or a description appearing in the recorded real county property records, such as a subdivision lot, but when such was not immediately available, a tax lot would suffice because the county assessor usually had a serviceable legal description on hand. The problem with tax lots is that they can change over time and one would not want to rely on them for a permanent record. However, they are serviceable and sufficient to identify property that is subject to a contract for purchase, including an option to purchase, so that the parties can know with certainty what is being sold and what is being purchased. The description in the Option is clearly sufficient for that purpose.